# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

THOMAS CLINTON LEFREE,

       Defendant-Appellant.

UNPUBLISHED
November 18, 2014

No. 317502
Washtenaw Circuit Court
LC No. 12-000929-FH

Before: OWENS, P.J., and MARKEY and SERVITTO, JJ.

PER CURIAM.

Defendant appeals by right his conviction of carrying a concealed weapon, MCL 750.227. He was sentenced to one year of probation, during which he was to complete substance abuse treatment, undergo a mental health examination, and pay costs. We affirm.

## I. FACTUAL BACKGROUND

On June 12, 2012 Chelsea Police Officers Shane Sumner and Richard Kinsey noticed a vehicle by Rich's gas station, which had been victim of several burglaries in the past. Sumner followed the vehicle, which defendant was driving, to a supermarket. Defendant exited the vehicle with the intent of buying cigarettes at the store. Upon realizing that the store was closed, defendant returned to his vehicle where Sumner was waiting. Sumner had positioned his police car between defendant and defendant's vehicle, but he did not have his flashing lights on. Sumner asked defendant for his identification, and defendant complied. Sumner ran a LIEN check on defendant, which came back clean, and then returned defendant's identification and left. Officer Kinsey, who observed the encounter at the supermarket, radioed Sumner and asked if he had had a chance to observe the inside of defendant's vehicle. When Sumner replied that he had not, Kinsey suggested that they contact defendant again and look inside his vehicle.

Defendant drove from the supermarket to a Sunoco gas station and went inside to buy cigarettes. While defendant was inside, Kinsey approached and parked his police car on the left side of defendant's vehicle but did not turn his flashing lights on. Kinsey then used his flashlight to view inside the vehicle and observed a screw driver and a long gun case. When defendant returned, Kinsey asked him what was in the case, and defendant informed him that the case contained a .22 caliber rifle.

-1-

Sumner then approached and parked on the right side of defendant's vehicle. He also did not turn on his vehicle emergency lights. While standing approximately two to three feet away from defendant, Sumner asked him if he had any other weapons in the vehicle. Defendant stated that he also had a .45 caliber pistol. Before defendant revealed this, the officers never made any physical contact with defendant, pointed a weapon at him, or said anything to indicate to defendant that he was not free to leave. After defendant revealed that he had a .45 caliber pistol in the vehicle, Sumner searched the vehicle and found the pistol. Kinsey then placed defendant under arrest.

## II. STANDARD OF REVIEW

"Questions of law relevant to a motion to suppress are reviewed de novo." *People v Harkins*, 468 Mich 488, 496; 668 NW2d 602 (2003). We review a trial court's findings of fact for clear error, and review de novo the trial court's ultimate decision on a motion to suppress. *People v Frohriep*, 247 Mich App 692, 702; 637 NW2d 562 (2001). A trial court's finding of fact is clearly erroneous if on review of the entire record, we are left with a definite and firm conviction that a mistake has been made. *Id*.

## III. ANALYSIS

Defendant first argues that Officer Kinsey performed an illegal search of his vehicle in violation of the Fourth Amendment[1] when he used a flashlight to look inside. Second, defendant argues that he was unconstitutionally seized in violation of the Fourth Amendment by the police officers both at the supermarket and the Sunoco gas station. Finally, defendant argues that both his statement to Officer Sumner and the gun discovered during the search of his vehicle should be suppressed as the fruit of these Fourth Amendment violations.

A threshold issue that must be addressed in any claim of an unconstitutional search is whether a "search" within in the ambit of the Fourth Amendment actually took place. See *People v Whalen*, 390 Mich 672, 677; 213 NW2d 116 (1973). In general, a "search" occurs when the government intrudes on a person's subjective expectation of privacy, which expectation society recognizes as reasonable. *People v Antwine*, 293 Mich App 192, 194-195; 809 NW2d 439 (2011). But what an individual knowingly exposes to the public is not subject to the protection of the Fourth Amendment. *Whalen*, 390 Mich at 677, citing *Katz v United States*, 389 US 347, 351; 88 S Ct 507; 19 L Ed 2d 576 (1967)

An individual does not have a legitimate expectation of privacy in the interior of an automobile that is visible from the outside, whether seen by curious passersby or police officers. *People v Daniels*, 160 Mich App 614, 620; 408 NW2d 398 (1987), citing *Texas v Brown*, 460 US 730, 740; 103 S Ct 1535; 75 L Ed 2d 502 (1983). "It is of no relevance that artificial illumination is used to enable an officer to view during the night that which could have been plainly seen during the day." *Id.* Thus, Kinsey's action of looking into defendant's vehicle, which was parked in a public parking lot, was not a search under the Fourth Amendment.

---

[1] US Const, Am IV.

Defendant's contrary argument, citing *Whalen*, 390 Mich at 679, quoting *Marshall v United States*, 422 F2d 185, 189 (CA 5, 1970), is unavailing. The quoted passage merely states that use of artificial illumination is irrelevant to the determination whether a Fourth Amendment search occurred. Similarly, although defendant is correct that Kinsey was searching for evidence of a crime when he looked inside defendant's car, the officer's subjective intent is irrelevant to the constitutional validity of a search or seizure. *People v LaBelle*, 478 Mich 891; 732 NW2d 114 (2007); *Antwine*, 293 Mich App at 200-201.

The prosecutor does not dispute that once Sumner opened defendant's vehicle and physically intruded into it, his actions became a search subject to the protections of the Fourth Amendment. Instead, the prosecutor argues that this warrantless search was justified by probable cause and the automobile exception to the general rule that a search warrant is necessary. See *People v Kazmierczak*, 461 Mich 411, 418; 605 NW2d 667 (2000). "[I]f a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment permits police to search the vehicle without more." *Id.* Probable cause is present "where there is a 'substantial basis' for inferring a 'fair probability' that contraband or evidence of a crime will be found in a particular place." *Id.* at 417-418 (citation omitted).

In the present case, defendant freely admitted to the officers that he was carrying a .45 caliber pistol in his vehicle. This admission provided a substantial basis for a reasonably prudent officer to infer that a .45 caliber pistol would actually be found in the vehicle in violation of MCL 750.227(b). Therefore, the officers had probable cause to search defendant's vehicle.

Defendant was also not unconstitutionally seized before revealing that he was carrying a concealed weapon and the officers' discovery of that weapon. While a police officer must have reasonable suspicion to make a temporary investigatory stop, "not every encounter between a police officer and a citizen requires this level of constitutional justification." *People v Jenkins*, 472 Mich 26, 32; 691 NW2d 759 (2005). A "seizure" under the Fourth Amendment occurs if, "in view of all the circumstances, a reasonable person would have believed that he was not free to leave." *Id.* Our Supreme Court has categorized police-citizen encounters as falling under three different tiers. *People v Shabaz*, 424 Mich 42, 56-58; 378 NW2d 451 (1985). The first tier consists of a police officer asking mere non-coercive questions of a person in a public setting. *Id.* at 56-57. No level of suspicion is required for an officer to engage in such contact. *Id.* at 57. The second tier involves a stop on the basis of reasonable suspicion "that a person has committed or is about to commit a crime." *Id.* The third tier involves the full arrest of an individual and requires probable cause. *Id.* at 58.

The US Supreme Court has held that merely asking questions or requesting identification, does not amount to a seizure under the Fourth Amendment. *Immigration & Naturalization Servs v Delgado*, 466 US 210, 216; 104 S Ct 1758, 80 L Ed 2d 247 (1984). "While most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response." *Id.* Rather, a seizure requires "either the application of physical force or the submission by the suspect to an officer's show of authority." *People v Lewis*, 199 Mich App 556, 559; 502 NW2d 363 (1993). A seizure may occur where the officers use threats, physical contact, or the display of a weapon to coerce compliance. *People v Sasson*, 178 Mich App 257, 262; 443 NW2d 394 (1989). But when an

officer approaches a person seeking cooperation through non-threatening questioning, no restraint on the person's liberty occurs, and the person is not seized. *Jenkins*, 472 Mich at 33.

The record shows that during both the encounters at the supermarket and at the Sunoco gas station the police officers merely requested defendant's identification and asked him several questions. Defendant testified that he subjectively felt such requests were orders and that he was not free to leave. Defendant points to the location of the police vehicles with respect to his and to the timing of the second police contact: so shortly after the first that it caused him to believe that he was being targeted.

In *United States v See*, 574 F 3d 309, 311, 313 (CA 6, 2009), the court held that when an officer "parked his vehicle in front of [the defendant's] car so that [the defendant] could not depart" the officer had conducted a *Terry* stop that required reasonable suspicion. The court concluded a reasonable person would not feel free to leave when a marked patrol car was positioned so that the person was blocked or could not move his or her vehicle. *Id.* at 312-313. In *United States v Gross*, 662 F3d 393, 396, 399-400 (CA 6, 2011), while the defendant was in his vehicle, a police officer parked his police vehicle directly behind it and turned on the police spotlight. The *Gross* court described the officer's actions as "markedly similar" to those in *See*, and held that the police officer had initiated a stop that required reasonable suspicion. *Id.* at 399-400. Defendant argues that his encounter with the police officers at the Sunoco gas station is similar to the situations that were present in *See* and *Gross*.[2]

At the time defendant gave his incriminating response, there was a police vehicle on both the left and the right of his vehicle; however, the evidence does not show, as was the case in both *See* and *Gross*, that defendant could not move his vehicle. Unlike in *See*, the officers in the present case did not position their vehicles in front of defendant's so as to physically prevent him from moving it. And unlike in *Gross*, the officers did not shine their police vehicle's spotlight into defendant's vehicle so as to constructively indicate that defendant was not free to move it. Also, the defendants in both *See* and *Gross* were in their vehicles when the officer approached; here, defendant was not.

In respect to the timing between the first and second stops, defendant cites *United States v Beauchamp*, 659 F3d 560 (CA 6, 2011) as support. In *Beauchamp*, when a police officer spotted the defendant, he hurriedly walked away. *Id.* at 564. Two blocks away, another officer saw defendant. The officer got out of his patrol car and instructed the defendant to stop and walk toward him. *Id.* This second officer then questioned the defendant and eventually asked if he could search him. *Id.* at 565. The search revealed that the defendant was carrying drugs in between his buttocks. *Id.* The *Beauchmap* court determined that a reasonable person in the defendant's position would have perceived the separate interactions with the police officers as connected and thus as an indication that he was being targeted. *Id.* at 566. The court noted that the encounters were only minutes apart and several streets over. *Id.* But the court noted that it was when the officer gave instructions to the defendant to stop, that the seizure occurred because that was "when [the defendant] complied with the officer's instructions and submitted to the

---

[2] Both *See* and *Gross* concerned conduct by the same police officer. *Gross*, 662 F3d at 399-400.

-4-

officer's show of authority." *Id.* at 567. Unlike in the present case where the officers merely asked defendant a question, in *Beauchamp*, the officer actually gave the defendant instructions with which the defendant complied. Therefore, the court determined that while targeting of a defendant was certainly a factor in determining whether a seizure took place, targeting alone was insufficient to cause a reasonable person to believe he or she was being seized.

In sum, there is nothing in the instant record that would support a finding that a reasonable person would not have felt free to leave. *Jenkins*, 472 Mich at 32. The testimony showed that at no point prior to defendant's statement that a .45 caliber pistol was in the vehicle did the police officers make physical contact with defendant, point a weapon at him, or even turn the lights of their police cars on. The actions of the police officers in the present case are similar to the actions of the police officers in *Jenkins* and *Sasson*, where the Michigan Supreme Court, and this Court concluded mere requests for identification and non-coercive questions would not have lead a reasonable person to conclude a seizure had occurred.

Because defendant's constitutional rights were not violated, we need not address defendant's third argument on whether the evidence obtained was the fruit of a Fourth Amendment violation. There was no Fourth Amendment violation in this case, so, patently, no evidence obtained against defendant should be suppressed as fruit of the poisonous tree.

We affirm.

/s/ Donald S. Owens
/s/ Jane E. Markey
/s/ Deborah A. Servitto

-5-