# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

STEVEN ANTHONY JAMES, JR.,

Defendant-Appellant.

UNPUBLISHED
June 14, 2016

No. 326393
Wayne Circuit Court
LC No. 14-009181-FH

Before: JANSEN, P.J., and O'CONNELL and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of carrying a concealed weapon, MCL 750.227, felon in possession of a firearm (felon-in-possession), MCL 750.224f, possession of a firearm during the commission of a felony, second offense (felony-firearm), MCL 750.227b, and unlawful possession of marijuana, MCL 333.7403(2)(d). Defendant was sentenced as a fourth habitual offender, MCL 769.12, to the mandatory five-year term of imprisonment for the felony-firearm (second offense) conviction, and five years' probation for each of the remaining convictions to be served concurrently to the felony-firearm conviction.[1] We affirm.

## I. PERTINENT FACTS

On October 5, 2014, at around 12:00 a.m., Detroit Police Officers Daniel Harnphanich, William Zeolla, and Jeffrey Banks were performing a random patrol in their scout car in the area of Pembroke and Glastonbury in Detroit. As the officers drove west on Pembroke, they observed a man riding a bicycle about 80 feet away traveling on Pembroke heading east toward their scout car. The bicycle was not equipped with a front light, in violation of an ordinance, prompting the officers to investigate the individual riding the bicycle.[2] The officers observed the

---

[1] As discussed in further detail below, the judgment of sentence accurately reflects that the probationary sentences are to be served concurrently with the term of imprisonment for the felony-firearm (second offense) conviction.

[2] MCL 257.662(1) provides, in part, that a bicycle "being operated on a roadway between ½ hour after sunset and ½ hour before sunrise shall be equipped with a lamp on the front that emits a white light." A violation of MCL 257.662(1) constitutes a civil infraction. MCL 257.662(6).

-1-

bicycle turn onto Glastonbury and, immediately thereafter, they turned their scout car onto Glastonbury. Officer Zeolla, either before or after they made the turn, illuminated the scout car's spotlight on the bicycle. As soon as the scout car turned and the bicycle was illuminated with the spotlight, Officers Harnphanich and Zeolla observed defendant, who was facing the police car, immediately jump off of the bicycle, look in their direction, remove a handgun from his waistband, turn away from the scout car, and throw the gun into the backyard of a vacant house located at the corner of Pembroke and Glastonbury. The officers got out of their car, ordered defendant down to the ground, and arrested him. Officer Zeolla then proceeded to search defendant's person and recovered 10 knotted baggies containing marijuana from his jacket pocket, while Officer Harnphanich went to the yard where defendant threw the gun to look for the gun. In the backyard, Officer Harnphanich recovered a .38 caliber, blue steel, semiautomatic handgun loaded with five live rounds.

## II. CONSECUTIVE SENTENCING

Defendant first claims, and the prosecution concurs, that the trial court erred by ordering his probationary sentences for his convictions of carrying a concealed weapon, felon-in-possession, and unlawful possession of marijuana, to run consecutively, instead of concurrently, to his five-year term of imprisonment for his felony-firearm (second offense) conviction. We agree that defendant's term of imprisonment for his felony-firearm (second offense) conviction must run concurrently with his probationary sentences, but conclude that remand is not necessary because the judgment of sentence correctly reflects that defendant's felony-firearm (second offense) sentence runs concurrently with his probationary sentences.

Defendant did not preserve the issue below, but we may review it because the issue is one of law, and the record includes the facts necessary to resolve it. See *People v Brown*, 220 Mich App 680, 681; 560 NW2d 80 (1996). In *Brown*, a case directly analogous to the instant case, this Court, recognizing that "[a] consecutive sentence may be imposed only if specifically authorized by statute," held that the felony-firearm statute, MCL 750.227b, "does not provide statutory authority for the imposition of a consecutive sentence of probation" for the predicate felony.[3] *Id*. at 683-685. Thus, where the sentence for the predicate felony is a term of probation,

---

Detroit Ordinances, § 55-3-1 provides, in part, "[T]he Michigan Vehicle Code, being MCL 257.1 through 257.923, as subsequently amended, is hereby adopted and incorporated by reference into this Code as if fully set out herein."

[3] The felony-firearm statute, MCL 750.227b, provides, in pertinent part:

> (1) A person who carries or has in his or her possession a firearm when he or she commits or attempts to commit a felony, except a violation of section 223, 227, 227a, or 230, is guilty of a felony and shall be punished by imprisonment for 2 years. Upon a second conviction under this subsection, the person shall be punished by imprisonment for 5 years. Upon a third or subsequent conviction under this subsection, the person shall be punished by imprisonment for 10 years.

\* \* \*

that probationary term must run concurrent with the mandatory sentence of imprisonment for the felony-firearm conviction. *Id.* at 684-685. Further, the general rule that "concurrent sentencing is the norm" and "[a] consecutive sentence may be imposed only if specifically authorized by statute" applies to probationary sentences for other felonies that did not serve as the predicate felony to the felony-firearm conviction. *Id.* at 682. See also *People v Clark*, 463 Mich 459, 463; 619 NW2d 538 (2000) (concluding that the Legislature intended the sentence for felony-firearm to be consecutive only to the sentence for the underlying felony).

Defendant was sentenced to the statutorily mandated five-year term of imprisonment for his felony-firearm conviction, second offense, five years' probation for his felon-in-possession conviction, the predicate felony, and five years' probation for his convictions of the nonpredicate offenses of carrying a concealed weapon and unlawful possession of marijuana. At sentencing, the court stated that defendant's probationary sentences would run consecutive to his felony-firearm sentence. However, the judgment of sentence entered by the court explicitly provides that defendant's probationary sentences are concurrent with his sentence of imprisonment for felony-firearm (second offense). Thus, the judgment of sentence accurately reflects the concurrent nature of defendant's sentences. "[A] trial court speaks through its written orders." *People v Davie (After Remand),* 225 Mich App 592, 600; 571 NW2d 229 (1997). Consequently, because the judgment of sentence properly requires defendant's probationary sentences to run concurrently with his sentence of imprisonment for felony-firearm, there is no error to correct and remand is not required.

## III. DOUBLE JEOPARDY

Defendant next claims that his convictions of both felony-firearm and felon-in-possession violate the constitutional prohibition against double jeopardy because the Legislature did not intend for felon-in-possession to be used as the predicate felony in a prosecution of felony-firearm, and they constitute the same offense for double jeopardy purposes. Defendant acknowledges that the Michigan Supreme Court in *People v Calloway*, 469 Mich 448; 671 NW2d 733 (2003), as well as this Court in *People v Dillard*, 246 Mich App 163; 631 NW2d 755 (2001), have otherwise construed the legislative intent of the felony-firearm statute, but asserts that these decisions were wrongly decided. We disagree.

Defendant failed to preserve this issue for appellate review by raising it before the trial court, and, therefore, our review is limited to plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999); *People v Meshell*, 265 Mich App 616, 628; 696 NW2d 754 (2005). The Michigan Supreme Court in *Calloway*, 469 Mich at 452, has

(3) A term of imprisonment prescribed by this section is in addition to the sentence imposed for the conviction of the felony or the attempt to commit the felony and shall be served consecutively with and preceding *any term of imprisonment* imposed for the conviction of the felony or attempt to commit the felony. [MCL 750.227b(1) & (3) (emphasis added).]

MCL 750.227b was recently amended by 2015 PA 26, but the recent amendment does not alter the meaning of the relevant provisions of the statute. See 2015 PA 26.

specifically considered and rejected the double jeopardy issue raised by defendant, holding that the Legislature intended to authorize multiple punishments for felon-in-possession and felony-firearm, and thus, the imposition of multiple punishments does not violate the constitutional prohibition against double jeopardy. In so deciding, the Court concluded:

> In considering MCL 750.227b in [*People v Mitchell*, 456 Mich 693; 575 NW2d 283 (1998)], we concluded that, with the exception of the four enumerated felonies,[4] it was the Legislatures intent "to provide for an additional felony charge and sentence whenever a person possessing a firearm committed a felony other than those four explicitly enumerated in the felony-firearm statute." *Id*. at 698.

> We follow, as did the Court of Appeals in *Dillard*, *supra*, our *Mitchell* opinion in resolving this matter. Because the felon in possession charge is not one of the felony exceptions in the statute, it is clear that defendant could constitutionally be given cumulative punishments when charged and convicted of both felon in possession, MCL 750.224f, and felony-firearm, MCL 750.227b. Because there is no violation of the double jeopardy clause, the Court of Appeals properly affirmed defendant's convictions. [*Id*.]

"This Court is bound to follow decisions of our Supreme Court." *People v Strickland*, 293 Mich App 393, 402; 810 NW2d 660 (2011) (citation omitted). Thus, we must follow *Calloway* and reject defendant's argument that his convictions and sentences for felony-firearm and felon-in-possession violate the constitutional prohibition against double jeopardy.

We note that in *Dillard*, 246 Mich App at 167-168, this Court explicitly rejected the specific argument raised by defendant, i.e., that the Court misconstrued the legislative intent as authorizing multiple punishments for both felon-in-possession and felony-firearm because the felon-in-possession statute was enacted in 1992 after the 1976 enactment of, and 1990 amendments to, the felony-firearm statute. This Court reasoned, "In enacting the felon in possession statute the Legislature presumably was aware of the four exceptions to the felony-firearm statue." *Id*. at 168. Thus, "had the Legislature wished to exclude the felon in possession charge as a basis for liability under the felony-firearm statute, the Legislature would have amended the felony-firearm statute to explicitly exclude the possibility of a conviction under the felony-firearm statute that was premised on MCL 750.224f." *Id*. "Because [the] defendant's felon in possession charge unquestionably does not constitute one of the explicitly enumerated exceptions to the felony-firearm statute, we conclude that the Legislature clearly intended to permit a defendant charged with felon in possession to be properly charged with an additional felony-firearm count." *Id*. at 167-168.

---

[4] The four enumerated felonies are "MCL 750.223 (unlawful sale of a firearm), MCL 750.227 (carrying a concealed weapon), MCL 750.227a (unlawful possession by licensee), and MCL 750.230 (alteration or removal of identifying marks)." *Calloway*, 469 Mich at 452 n 4.

Likewise, this Court in *Dillard* rejected defendant's argument that felony-firearm and felon-in-possession constitute the same offense for double jeopardy purposes because they both involve the same instance of possession of a firearm. This Court concluded that the "two statutes have distinct purposes that address different social norms," and thus, "should be viewed as separate and amenable to permitting multiple punishments." *Dillard*, 246 Mich App at 171. Specifically, the felon-in-possession statute "focuses on the criminal status of a possessor of a firearm" and serves the " 'legitimate legislative purpose of keeping guns out of the hands of those most likely to use them against the public,' " i.e., convicted felons " 'who have exhibited their disregard for ordered society and pose a threat to public safety.' " *Id*. at 170 (citation omitted). On the other hand, the conduct addressed by the felony-firearm statute is not the mere possession of a firearm, but "the act of utilizing a firearm to facilitate the commission of a felony," and evidences a legislative intent "to reduce the possibility of injury to victims, passersby, and police officers posed by a criminal's utilization of a firearm and to deter the underlying felony itself," which the legislature has recognized " 'entails a distinct social harm inimical to the public health, safety and welfare which deserves special treatment.' " *Id*. at 170-171 (citation omitted). "Because these two statutes have distinct purposes that address different social norms, they should be viewed as separate and amenable to permitting multiple punishments" and do not offend double jeopardy protections. *Id*. at 171. "A published opinion of the Court of Appeals has precedential effect under the rule of stare decisis." MCR 7.215(C)(2). Thus, we decline to adopt defendant's argument.

Under prevailing law, defendant's convictions and sentences for felony-firearm and felon-in-possession reflect the intent of the Legislature and constitute different offenses that do not violate the constitutional protection against double jeopardy. See *Calloway*, 469 Mich at 452; *Dillard*, 246 Mich App at 167-168. Thus, defendant was properly convicted of both felon-in-possession and felony-firearm.

## IV. STANDARD 4 BRIEF

In his Standard 4 brief, defendant raises claims of prosecutorial misconduct, discovery violations, and ineffective assistance of counsel.

### A. CLAIMS OF PROSECUTORIAL MISCONDUCT

Defendant argues in his Standard 4 brief that the prosecutor committed misconduct. We disagree.

None of defendant's claims of prosecutorial misconduct were preserved by timely and specific objection for review by this Court. See *People v Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011). Our review of these unpreserved issues is limited to plain error affecting substantial rights. *Id*. "The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial." *Id*. "Prosecutorial misconduct issues are decided on a case-by-case basis, and the reviewing court must examine the record and evaluate a prosecutor's remarks in context." *Id*. at 382-383. This Court cannot find error requiring reversal " 'where a curative instruction could have alleviated any prejudicial effect.' " *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008) (citation omitted).

Defendant first claims that the prosecutor made a "misstatement of facts of evidence in her opening statement to the jury of a bike and .38 blue steel revolver." "A prosecutor may not make a statement of fact to the jury that is unsupported by evidence, but she is free to argue the evidence and any reasonable inferences that may arise from the evidence." *People v Ackerman*, 257 Mich App 434, 450; 669 NW2d 818 (2003). Here, the challenged statements were clearly supported by the evidence, specifically the officers' testimony that they observed defendant riding a bicycle without a front light in violation of a city ordinance. They saw defendant jump off the bicycle, remove a gun from his waistband, and throw the gun into the backyard of a vacant house. They retrieved a .38 caliber, blue steel semiautomatic handgun from the yard where defendant threw the gun. Although the prosecutor did not actually present the bicycle or pictures of it, or physically link defendant to the gun with fingerprint evidence, the officers' testimony clearly supported her opening statement, and thus, defendant failed to establish that the prosecutor misled the jury by stating facts that were not supported by the evidence. See *id*. And, the absence of physical evidence to support the officers' testimony goes to the weight or credibility of the officers' testimony, which is the role of the jury to determine. See *People v Eisen*, 296 Mich App 326, 331; 820 NW2d 229 (2012) ("We will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses.") (citation and quotation marks omitted). Likewise, contrary to defendant's assertion, the prosecutor also properly relied on the officers' testimony to support her closing argument. There was no impropriety with regard to the prosecutor's opening statement and closing argument.

Defendant next claims that the prosecutor impermissibly "implied [her] personal belief that defendant was guilty" by stating during closing argument, "And I'm going to ask you to find the defendant guilty of all three counts because he is guilty." "Prosecutors are typically afforded great latitude regarding their arguments and conduct at trial." *Unger*, 278 Mich App at 236. However, prosecutors should not express their personal opinion of a defendant's guilt or use the prestige of their office to inject personal opinion. *People v Bahoda*, 448 Mich 261, 282-283, 286; 531 NW2d 659 (1995).

We find no impropriety in the prosecutor's statement "he is guilty" when viewed in the context of the prosecutor's closing argument. The prosecutor made the statement in the context of arguing that the evidence established defendant's guilt as follows:

> So if you believe the testimony of the officers beyond a reasonable doubt, and testimony is evidence, and the judge is going to tell you that testimony is evidence, you must find the defendant guilty. And if you believe that I have to have fingerprint evidence then you are wrong. You are wrong. I have to prove the elements of the charges. And there's nothing contradicting the testimony of these police officers in this case. And I'm going to ask you to find the defendant guilty of all three counts because he is guilty.

Viewing the argument in context, it is evident that the prosecutor did not improperly express her personal belief that defendant was guilty, but implied that the uncontradicted testimony of the police officers sufficiently established his guilt. "[T]he prosecutor's remarks did not urge the jury to improperly suspend its own powers of critical analysis and judgment in deference to those of the police and prosecutor, but rather urged the jury to resolve the case on the basis of reasoned consideration of the evidence." *People v Whitfield*, 214 Mich App 348, 352; 543 NW2d 347

(1995) (citations and quotation marks omitted). The prosecutor's statements were not improper and did not constitute plain error. See *Carines*, 460 Mich at 763.

The above challenged statements made during the prosecutor's opening statement and closing argument were not improper. Even if any of the challenged statements were improper, they were not outcome determinative. The trial court instructed the jury that the lawyers' opening and closing arguments are not evidence and that it is the jury's function to determine the facts of the case and the credibility of the witnesses. " '[J]urors are presumed to follow their instructions, and instructions are presumed to cure most errors.' " *People v Snyder*, 301 Mich App 99, 112; 835 NW2d 608 (2013) (citation omitted). Thus, even if there was some impropriety in the prosecutor's statements, the jury instructions would have alleviated any prejudicial effect and adequately protected defendant's substantial rights. See *Carines*, 460 Mich at 763.

Defendant next appears to claim that the prosecutor committed misconduct by eliciting false testimony from the police officers regarding the matter of a video recording from their scout car. A " 'prosecutor may not knowingly use false testimony to obtain a conviction, and . . . has a duty to correct false evidence.' " *People v Herndon*, 246 Mich App 371, 417; 633 NW2d 376 (2001) (citation omitted). On this record, there is no reason to conclude that the officers testified falsely. Contrary to defendant's assertion, their testimony regarding the absence of a scout car video recording did not create the inference that they testified falsely or that the prosecutor knew they would testify falsely. Instead, the officers testified that a scout car video recording of the incident did not exist. Officer Harnphanich testified that the officer in charge informed him that there was no video, and he did not know why a video could not be pulled, while Officer Zeolla explained that he believed a video was not recorded because he did not activate the car's lights or sirens, as there was no reason to do so. Any inconsistencies in this testimony did not establish that the officers testified falsely. Moreover, there is no basis in the record for concluding that the prosecution knew that the officers' testimony was false. We conclude that none of defendant's claims amount to prosecutorial misconduct. Defendant was not denied a fair and impartial trial, and he failed to establish any plain error affecting his substantial rights. Reversal is not warranted based on his claims of prosecutorial misconduct.

## B. DISCOVERY VIOLATION

Defendant next argues in his Standard 4 brief that the prosecutor and the Detroit Police Department withheld evidence of a video recording from the scout car in violation of his right to due process. We disagree.

Defendant failed to preserve this issue for appellate review by raising it in the trial court, and thus, our review is limited to plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763; *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). To the extent that defendant argues that the prosecution suppressed evidence, " 'the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.' " *People v Chenault*, 495 Mich 142, 149; 845 NW2d 731 (2014), quoting *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963). The elements of a "*Brady*" violation are "(1) the prosecution has suppressed evidence; (2) that is

-7-

favorable to the accused; and (3) that is material." *Chenault*, 495 Mich at 150. The government is responsible for evidence that is within its control, regardless of the good or bad faith of the prosecution. *Id*. "Evidence is favorable to the defense when it is either exculpatory or impeaching." *Id*. In order to establish materiality, "a defendant must show that 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' " *Id*. (citation omitted). A "reasonable probability" is defined as " 'a probability sufficient to undermine confidence in the outcome.' " *Id*. (citation omitted). The issue is whether the defendant received a fair trial in the absence of the evidence that was suppressed. *Id*. at 150-151.

Defendant failed to show that the prosecution suppressed evidence. Instead, the record indicates that there was no recording of the incident. Before trial, the court ordered that the audio and video recordings from the police scout car, *if available*, be turned over to defendant. Officer Harnphanich testified that he was told by the officer in charge that there was no audio or video recording, and Officer Zeolla, who was driving the scout car, testified that it was his understanding that the lights and sirens must be activated for the car's camera and microphone to work, and he did not activate the lights and siren in this matter because there was no reason to do so. Further, contrary to defendant's assertion that the prosecutor "made [an] offer of proof of video evidence at" the pretrial hearing, she never indicated that a video recording existed. Instead, she merely indicated that the discovery order was "in the works" and the officer in charge wanted to set up a time so he could ensure that he had the scout car's video recording. On this record, defendant did not establish that a video recording existed for the prosecutor to produce. See *Chenault*, 495 Mich at 149-151.

In addition, to the extent that defendant argues that the prosecution failed to preserve evidence, defendant failed to demonstrate a failure to preserve evidence or bad faith on the part of the prosecutor or the Detroit Police Department in failing to preserve and produce the video recording. The United States Supreme Court has concluded:

> The Due Process Clause of the Fourteenth Amendment, as interpreted in *Brady*, makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence. But we think the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant. [*Arizona v Youngblood*, 488 US 51, 57; 109 S Ct 333; 102 L Ed 2d 281 (1988).]

Thus, a criminal defendant must show bad faith on the part of the police in failing to preserve potentially useful evidence. *Id*. at 58. In this case, the record indicates that the events surrounding defendant's arrest were never recorded by the scout car's camera. Thus, this is not a situation in which the police failed to preserve evidence. The record also does not indicate any bad faith on the part of the officers. A defendant does not have a due-process right to have law enforcement "use a particular investigatory tool." *Id*. at 59. Therefore, defendant's argument fails.

We likewise reject defendant's claim that he was not provided with the activity logs or any of the police reports as required pursuant to MCR 6.201. Upon request from a defendant, a

prosecutor must provide a defendant with "any police report and interrogation records concerning the case." MCR 6.201(B)(2). Contrary to defendant's claim, it is apparent from the record that defendant was provided with the police reports because, during cross-examination, defense counsel impeached Officer Harnphanich with his investigation report and the activity log. Thus, defendant's claim is not supported by the record.

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant finally claims in his Standard 4 brief that his trial counsel rendered ineffective assistance. We disagree.

Defendant failed to preserve this issue by moving for a new trial or evidentiary hearing before the trial court. See *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). We review an unpreserved claim of ineffective assistance of counsel for mistakes apparent on the existing record. See *id*. "The question whether defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). To prove a claim of ineffective assistance of counsel, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Id.* at 51-52. "[A] defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *Id.* at 52.

Defendant first claims that the officers illegally seized the handgun as the result of an unlawful stop and arrest, and thus, defense counsel's failure to file a motion to suppress the handgun as a fruit of the illegal search and seizure, in violation of the Fourth Amendment protections against unreasonable search and seizure, US Const, Am IV; Const 1963, art 1, § 11, constitutes ineffective assistance. We disagree. We initially note that defendant does not elaborate on how the seizure of the gun violated his Fourth Amendment rights. " 'An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims . . . .' " *People v Bosca*, 310 Mich App 1, 16; 871 NW2d 307 (2015) (citation omitted), lv held in abeyance 872 NW2d 492 (2015). Nevertheless, we find no Fourth Amendment violation on the existing record.

The police officers' observations of defendant riding a bicycle around midnight without a light provided reasonable cause to effectuate an investigative stop of defendant for a suspected violation of MCL 257.662, a civil infraction. The "Fourth Amendment permits a police officer to make a brief investigative stop (a "*Terry* stop") and detain a person if the officer has a reasonable, articulable suspicion that criminal activity is afoot." *People v Steele*, 292 Mich App 308, 314; 806 NW2d 753 (2011), citing *Terry v Ohio*, 392 US 1, 30-31; 88 S Ct 1868; 20 L Ed 2d 889 (1968). Further, a police officer who witnesses the commission of a civil infraction under the Michigan vehicle code, MCL 257.1 *et seq*., may stop and detain the person temporarily in order to make a record of the vehicle check and to issue a written citation. MCL 257.742(1); *People v Chapo*, 283 Mich App 360, 366; 770 NW2d 68 (2009).

Although the officers were constitutionally permitted to make a brief investigative stop of defendant, the uncontradicted police testimony indicates that the officers had not yet stopped or

detained defendant when defendant revealed the presence of a gun on his person and discarded the gun, and thus, the seizure of the gun could not have been the result of that stop or arrest. See *People v Lewis*, 199 Mich App 556, 559-560; 502 NW2d 363 (1993). " '[T]he safeguards of the Constitution, with respect to police/citizen contact, will vest only after the citizen has been seized.' " *People v Frohriep*, 247 Mich App 692, 700; 637 NW2d 562 (2001) (citation omitted). "A 'seizure' within the meaning of the Fourth Amendment occurs only if, in view of all the circumstances, a reasonable person would have believed that he was not free to leave." *People v Jenkins*, 472 Mich 26, 32; 691 NW2d 759 (2005). This Court has found that a seizure occurs where there is "either the application of physical force or the submission by the suspect to an officer's show of authority." *Lewis*, 199 Mich App at 559. See also *Jenkins*, 472 Mich at 34 (concluding that the seizure did not occur until a police officer "physically hindered [the] defendant's departure and instructed him to stay in the officer's presence."). The officers' uncontradicted testimony indicates that defendant discarded the gun from his person before the officers effectuated the stop or used physical force, or defendant submitted to a show of authority. The officers testified that, after illuminating defendant with the car's spotlight, defendant immediately jumped off the bicycle, retrieved a handgun from his waistband, turned away from the car, and threw the gun into the backyard of a vacant home. The officers then got out of their car, ordered defendant to the ground, and handcuffed and detained him. The record does not indicate that, when defendant discarded the gun, the officers had approached him, pointed a weapon at him, ordered him to stay in their presence, or made any physical contact with him. Instead, the officers had merely illuminated their scout car's spotlight on defendant, which does not establish a reasonable belief that he was not free to leave. On this record, defendant was not "seized" to implicate any Fourth Amendment protections with respect to the gun. See *Jenkins*, 472 Mich at 32; *Lewis*, 199 Mich App at 557-560 (holding that the defendant was not seized until the officer "actually laid his hands" on him, and thus, the cocaine abandoned by the defendant during a police chase was not a fruit of an illegal seizure).

Once defendant discarded the gun from his person, it was in the plain view of the officers, who were entitled to seize the gun because its incriminating character was immediately apparent, and the officers were lawfully in a position to view it. See *People v Wilkens*, 267 Mich App 728, 733-734; 705 NW2d 728 (2005) (" 'The plain view doctrine allows police officers to seize, without a warrant, items in plain view if the officers are lawfully in a position from which they view the item, and if the item's incriminating character is immediately apparent.' "), quoting *People v Champion*, 452 Mich 92, 101; 549 NW2d 849 (1996).

We conclude, on the existing record, that defendant failed to establish a likelihood that the gun would have been suppressed as the fruit of an illegal stop or arrest of defendant had defense counsel moved to suppress it. Accordingly, defense counsel was not ineffective in failing to file a motion to suppress the handgun. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel.").

Defendant's next claim of ineffective assistance is that his trial counsel failed "to investigate available mitigation evidence" to challenge the prosecution's theory of a traffic stop. Defense counsel has a duty to investigate the case, and the failure to conduct a reasonable investigation can constitute ineffective assistance of counsel. *People v McGhee*, 268 Mich App 600, 625-626; 709 NW2d 595 (2005) (citation omitted). Initially, defendant fails to specify on

appeal what the "available mitigation evidence" is that his counsel failed to investigate or how he was prejudiced by counsel's failure to uncover this evidence. " 'An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims . . . .' " *Bosca*, 310 Mich App at 16 (citation omitted). Nevertheless, we find no error.

The record shows that the trial court appointed a private investigator to assist defendant, and before trial counsel indicated that the investigator was "seeking to see if there [were] any potential witnesses," trial counsel sought discovery of the police scout car's video and audio recordings and any activity logs of the matter, and the court ordered such discovery. In addition, fingerprint testing by the Michigan State Police lab was completed on the gun. This record indicates that a reasonable investigation was conducted. Further, defense counsel's cross-examination of the officers and his closing argument brought to light the lack of any physical evidence, i.e., fingerprints on the gun or the plastic baggie of marijuana and any video recordings from the scout car, to corroborate the officers' testimony and indicates that defense counsel understood and advocated defendant's position that the officers' testimony was not credible regarding the stop. On this record, defendant failed to demonstrate that his counsel was ineffective in failing to conduct a reasonable investigation or that he was prejudiced by the alleged ineffectiveness. See *Trakhtenberg*, 493 Mich at 51-52. Therefore, this claim of ineffectiveness fails.

Next, defendant briefly argues that defense counsel was ineffective by failing to "[b]ring to the court's attention that the prosecution has insufficient evidence." We disagree. The record indicates that defense counsel raised the issue of the sufficiency of the evidence by moving for a directed verdict after the prosecution presented its case and specifically argued that the evidence was insufficient given that the officers' testimony was the only evidence linking defendant to the gun and narcotics. Further, defense counsel challenged the sufficiency of the evidence in his closing argument by focusing on the lack of any physical evidence to corroborate the officers' testimony. Thus, the record does not support defendant's claim that his counsel failed to raise the sufficiency of the evidence before the court.

Defendant next claims that defense counsel was ineffective in failing to object to the prosecutor's opening statement and closing argument regarding evidence that was never admitted. We disagree. As discussed, the prosecutor's statements did not amount to prosecutorial misconduct. Thus, any objections defense counsel could have made would have been meritless. See *Ackerman*, 257 Mich App at 455. Additionally, the trial court's instructions to the jury alleviated any potential prejudice. See *Snyder*, 301 Mich App at 112.

Defendant finally claims that trial counsel was ineffective by failing to challenge the prosecutor's failure to turn over the evidence requested in the discovery order. As discussed, defendant failed to demonstrate any error with regard to the prosecution's failure to turn over the requested audio or video recordings from the police scout car. Instead, the record indicates that such recordings did not exist. Thus, any objections defense counsel could have made to the failure to turn over the recordings would have been meritless. See *Ackerman*, 257 Mich App at 455. Defendant failed to establish that counsel's performance fell below objective standards of

reasonableness and that, but for counsel's error, there is a reasonable probability that the result of the proceeding would have been different. See *Trakhtenberg*, 493 Mich at 51-52. Thus, his claims of ineffective assistance fail.[5] To the extent that defendant raises any additional arguments in his Standard 4 brief that are not specifically addressed in this opinion, we have reviewed and rejected all of his arguments.

       Affirmed.

/s/ Kathleen Jansen
/s/ Peter D. O'Connell
/s/ Michael J. Riordan

---

[5] Defendant argues in his Standard 4 brief that defense counsel failed to subject the case to meaningful adversarial testing. "[I]f counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." *United States v Cronic*, 466 US 648, 659; 104 S Ct 2039; 80 L Ed 2d 657 (1984). Defendant only argues that defense counsel's performance was deficient with regard to several specific points in the proceeding and does not argue that defense counsel's failure was complete. Therefore, the *Cronic* test does not apply in this case, and defendant's claims are properly analyzed under the two-prong ineffective assistance test articulated above. See *People v Frazier*, 478 Mich 231, 244; 733 NW2d 713 (2007) ("The *Cronic* test applies when the attorney's failure is complete, while the *Strickland* test applies when counsel failed at specific points of the proceeding.").