*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

v

MICHAEL DOUGLAS TIMMONS,

Defendant-Appellee.

UNPUBLISHED
February 19, 2019

No. 340380
Wayne Circuit Court
LC No. 17-001597-01-AR

Before: CAVANAGH, P.J., and BORRELLO and REDFORD, JJ.

PER CURIAM.

The prosecution appeals by leave granted the circuit court's order affirming the district court's order dismissing three felony charges[1] against defendant at the preliminary examination after granting defendant's motion to suppress the evidence. We reverse and remand.

This case arises out of an encounter between Detroit Police Officer Sarah Monti and defendant at a gas station in Detroit. Officer Monti was in a fully marked squad car driven by Officer Washington, with Officer Williams in the back seat. Officer Monti observed defendant's vehicle parked at a gas pump with the gas cap side of the car on the opposite side of the gas pump. Officer Washington approached defendant's vehicle from the rear and then parked in front of defendant's vehicle. Officer Monti saw defendant in the driver's seat. He looked surprised when he saw the police. Defendant then dipped his right shoulder toward the floor of the vehicle. Officer Monti believed that defendant's motion was consistent with putting some kind of contraband on the floor or under the seat.

The three officers then exited their parked vehicle. Officer Monti approached the driver's side of defendant's vehicle and asked defendant through the closed driver's side window to show

---

[1] Defendant was charged with felon in possession of a firearm, MCL 750.224f, carrying a concealed weapon, MCL 750.227, and possession of a firearm during the commission of a felony, MCL 750.227b.

his hands and to produce his identification. Defendant showed his hands, but did not produce his identification. Because defendant would not unlock his car door, roll down his window, or produce his identification, a supervisor and another police unit were called to come to the scene. Officer Monti was attempting to identify defendant and determine if he had a driver's license because he was sitting behind the wheel of a motor vehicle. Defendant eventually exited the vehicle after the second police unit arrived at the scene. While defendant was "detained," Officer Monti searched the area where defendant dipped his shoulder and found a handgun loaded with nine bullets. Defendant was then arrested.

At the preliminary examination defense counsel objected to the bindover, arguing that the police officers had no reason to approach and investigate defendant. Defendant had not committed any crime and yet the officers approached him and demanded his identification without any sufficient reason. The district court agreed and dismissed the charges, holding that the police officers did not have probable cause to investigate defendant. The district court's reasoning is as follows:

> *The Court*: I don't think the police had any probable cause to investigate him. How many times have I parked my car on the wrong side of the pump because that's the only pump that's open. Now, if I dipped my shoulder down because I dropped my Skittles on the floor or my key or my makeup or my cell phone, that still doesn't rise to a reasonable suspicion because someone is parked on the wrong side of the gas pump and looks surprised when the police pull up and then dip their shoulder.

> * * *

> Because the police didn't have any reason to investigate him specifically, I'm going to dismiss this matter.

> *Ms. Wyrick* [the prosecutor]: Your Honor, may I just place my objection? The officers don't need any reason to investigate anyone. They can come up to me if I'm sitting in my car in the parking lot over here and ask me what I'm doing. They don't need any reason to --

> *The Court*: And you can tell them "None of your business, officer. What is it you'd like?" And in this case the officer -- they were on the -- I understand they were giving special attention to the gas station. But other than him parking his car on the wrong side of the pump and looking surprised --

> *Ms. Wyrick*: And giving a surprised look and dipping his shoulder and refusing to interact.

> *The Court*: No. No. No. This is what we have to consider. He's parked on the wrong side of the pump. Big deal. He looked surprised when the police pulled up. Who doesn't? He dipped his shoulder. What was he dropping? What was he hiding? Skittles? A gun? Who knows? Did that give the police probable cause to come and investigate, because he's parked on the wrong side of the pump, looked shocked when he sees the police?

*Ms. Wyrick*:  You Honor, the police don't need probable cause to investigate.

*The Court*:  They need something.

*Ms. Wyrick*:  They need probable cause to make a stop, but they weren't making a stop.

*The Court*:  He was already stopped.

*Ms. Wyrick*:  Exactly.

*The Court*:  He was stopped at the gas pumps.  I don't know why they decided, well, he's parked on the wrong side of the gas pump; let's go investigate him.  I'm dismissing it.

*Ms. Wyrick*:  Thank you, Judge.

*The Court*:  All right.  Insufficient evidence.

The district court then entered a form order of dismissal, and checked the box that the case was dismissed for insufficient evidence.

Following the district court's order of dismissal, the prosecution appealed as of right to the circuit court.  The circuit court affirmed the district court's decision, reasoning that although the district court used the wrong standard, i.e., probable cause instead of reasonable suspicion, the district court reached the correct conclusion because the police officers did not have a reasonable suspicion that defendant committed or was about to commit a crime when they investigated him.

On appeal, the prosecution argues that the Fourth Amendment does not require that a police officer have any cause or suspicion to approach a person and ask him questions or ask for identification; thus, the lower courts reversibly erred in concluding otherwise.

At the conclusion of the preliminary examination, defense counsel essentially argued that the evidence against defendant must be suppressed because the police had no reason to approach and investigate him.[2]  That is, defendant was seized in violation of the Fourth Amendment.  See US Const, Am IV; Const 1963, art 1 § 11; *People v Barbarich*, 291 Mich App 468, 472; 807 NW2d 56 (2011).  The district court apparently agreed and refused to bind defendant over on the charges on the ground of "insufficient evidence."  The circuit court affirmed the lower court's decision to suppress the evidence and dismiss the charges.

---

[2]  See MCR 6.110(D)(2) ("If, during the preliminary examination, the court determines that evidence being offered is excludable, it must, on motion or objection, exclude the evidence.")

"Application of the exclusionary rule to a Fourth Amendment violation is a question of law that is reviewed de novo." *People v Jenkins*, 472 Mich 26, 31; 691 NW2d 759 (2005). While we review de novo a lower court's decision on a motion to suppress, its findings of fact are reviewed for clear error. *People v Williams*, 472 Mich 308, 313; 696 NW2d 636 (2005). "A finding of fact is clearly erroneous if, after a review of the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made." *People v Roberts*, 292 Mich App 492, 502; 808 NW2d 290 (2011) (quotation marks and citation omitted).

Generally, a search or seizure conducted without a warrant is presumptively unreasonable, and thus, unconstitutional. *Barbarich*, 291 Mich App at 472. There are, however, several categories of permissible warrantless searches and seizures and one is the *Terry* stop, also known as the investigative stop. See *Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968). As this Court has explained:

> Under this doctrine, if a police officer has a reasonable, articulable suspicion to believe a person has committed or is committing a crime given the totality of the circumstances, the officer may briefly stop that person for further investigation. Moreover, under *Terry*, a police officer may approach and temporarily detain a person for the purpose of investigating possible criminal behavior even if probable cause does not exist to arrest the person. The scope of any search or seizure must be limited to that which is necessary to quickly confirm or dispel the officer's suspicion. [*Barbarich*, 291 Mich App at 473 (internal citations omitted).]

The constitutional protections against unreasonable searches and seizures only apply, however, to governmental conduct that can reasonably be characterized as a "search" or a "seizure." *People v Frohriep*, 247 Mich App 692, 699; 637 NW2d 562 (2001). Not all encounters between police officers and persons are "seizures." *Jenkins*, 472 Mich at 32. "A 'seizure' within the meaning of the Fourth Amendment occurs only if, in view of all the circumstances, a reasonable person would have believed that he was not free to leave." *Id.*

Here, the prosecution argues that Officer Monti's initial approach and questioning of defendant was not a seizure. It appears that the district court and circuit court were of the opinions that a police officer cannot approach and question a citizen unless the officer has a reasonable suspicion of criminal activity. However, a person may be approached by an officer and asked questions and, unless there is some form of coercion or detention, there is no seizure. *Id.* at 33; *People v Shabaz*, 424 Mich 42, 56-57; 378 NW2d 451 (1985) (citation omitted); see also *Muehler v Mena*, 544 US 93, 100-101; 125 S Ct 1465; 161 L Ed 2d 299 (2005). When Officer Monti first approached defendant in his vehicle, she merely asked him to show his hands and to produce his identification. Asking defendant to show his hands was simply an attempt to keep the police officers safe and would not lead a reasonable person to believe that he was not free to leave. Officer Monti then asked for defendant's identification. "In the ordinary course a police officer is free to ask a person for identification without implicating the Fourth Amendment." *Jenkins*, 472 Mich at 33 (quotation marks and citation omitted). And in this case, because defendant was the driver of a motor vehicle, it was not unreasonable or coercive for Officer Monti to ask defendant for his identification for the purpose of identifying him. Again, an officer may approach a person and seek their voluntary cooperation through noncoercive

questioning and, because the person's liberty is not restrained, the person is not considered seized. *Id*. Therefore, defendant was not seized for purposes of the Fourth Amendment at this point in their encounter.

However, after Officer Monti approached the driver's side of defendant's vehicle and defendant refused to roll down his window and then refused to produce his identification, a supervisor and backup police officers were called. After the backup officers arrived, and thus numerous police officers were on the scene, defendant got out of his vehicle and he was "detained" while his vehicle was searched. At this point, the encounter between defendant and the police transformed into an investigatory stop, i.e., a seizure. Thus, to support the investigatory stop, Officer Monti was required to have "a reasonably articulable suspicion that criminal activity is afoot." *Jenkins*, 472 Mich at 32. "Whether an officer has a reasonable suspicion to make such an investigatory stop is determined case by case, on the basis of an analysis of the totality of the facts and circumstances. A determination regarding whether a reasonable suspicion exists must be based on commonsense judgments and inferences about human behavior." *Id*. (quotation marks and citations omitted).

Considering the totality of the facts and circumstances present in this case, Officer Monti had a reasonable suspicion to make the investigatory stop. Officer Monti testified at the preliminary examination that officers were told to give special attention to gas stations in the area while on patrol because of repeated criminal activity occurring at those locations. She first noticed defendant's vehicle because it was parked in front of a gas pump with the gas cap on the opposite side of the pump. After Officer Washington drove in front of defendant's vehicle, Officer Monti saw defendant in the driver's seat and he looked surprised when he saw the police. Defendant then dipped his right shoulder toward the floor of the vehicle. Based on her past experiences as a police officer, Officer Monti recognized this movement as being consistent with putting contraband on the floor or under the seat. "[D]eference should be given to the experience of law enforcement officers and their assessments of criminal modes and patterns." *People v Steele*, 292 Mich App 308, 315; 806 NW2d 753 (2011) (citations omitted). Then when Officer Monti approached defendant, he refused to roll down his window and then refused to produce his identification, although he was sitting in the driver's seat of a motor vehicle. Taken together, all of these facts and circumstances gave Officer Monti a reasonable suspicion that criminal activity was afoot, justifying the investigatory stop of defendant. Accordingly, we reverse the decision to suppress the evidence against defendant, i.e., the gun, on the ground that the investigatory stop violated defendant's Fourth Amendment rights.

Reversed and remanded for further proceedings. We do not retain jurisdiction.

/s/ Mark J. Cavanagh
/s/ Stephen L. Borrello
/s/ James Robert Redford