PER CURIAM.
This case requires us to consider when defendant’s consensual encounter with a police officer was transformed into an investigatory stop, which gives rise to Fourth Amendment protections and must be supported by reasonable suspicion. Defendant argues that the officer seized him without reasonable suspicion to do so. The trial court agreed, granting defendant’s *28 motion to suppress the incriminating evidence later found by the officer and dismissing the pending charges. The Court of Appeals affirmed.
We conclude that defendant was not “seized” within the meaning of the Fourth Amendment until after the totality of the circumstances gave the officer a reasonable suspicion that defendant had been engaged in criminal behavior. Accordingly, the trial court erred when it granted defendant’s motion. We reverse the judgment of the Court of Appeals and remand this case to the trial court for reinstatement of the charges brought against defendant and for further proceedings.
I. BACKGROUND
During the evening of August 23, 2001, the Ann Arbor Police Department received a complaint regarding a party in progress in the common area of a housing complex on North Maple Road. Officers Geoffrey Spickard and Jeff Lind were dispatched to the housing complex, which was known to the police as a high crime and drug area. Upon their arrival, they found a gathering of fifteen to twenty people drinking and talking loudly. Defendant and another man were seated on stairs leading to one of the housing units.
Officer Spickard approached defendant, and the two engaged in a general conversation about the party. At that point, a woman emerged from the attached housing unit and, using profane language, asked defendant who he was and why he was seated on her porch. After hearing this, Officer Spickard asked defendant if he lived in the housing complex. Defendant said that he did not, and Officer Spickard asked to see defendant’s identification. When defendant handed over his state identification card, Officer Spickard pulled out his personal radio and started to place a call to the Law Enforcement Information Network (LEIN).
*29 Defendant’s behavior immediately changed.[1] He became obviously nervous and made furtive gestures toward a large pocket on the side of his pants. He began to walk away, despite the fact that Officer Spiekard still held his identification card and was speaking to him.[2] Several residents of the housing complex called out invitations for defendant to enter their homes.
At that point, Officer Spiekard and his partner walked alongside defendant, encouraging him to wait for the results of the LEIN inquiry. When defendant did not stop, Officer Spiekard placed a hand on defendant’s back and told him that he was not free to leave.
The LEIN inquiry revealed an outstanding warrant for defendant’s arrest. As Officer Spiekard was placing defendant in handcuffs, a gun fell from defendant’s waistband to the ground.
II. PROCEDURAL HISTORY
Defendant was charged with carrying a concealed weapon, MCL 750.227; possession of a firearm by a *30 felon, MCL 750.224f; and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. He moved to suppress the evidence on Fourth Amendment grounds and sought dismissal of the charges.
The trial court held an evidentiary hearing at which both Officer Spickard and defendant testified. The trial court considered Officer Spickard’s testimony and determined that, for purposes of the Fourth Amendment, defendant was “seized” when he was asked for identification. In reaching this conclusion, the trial court relied on Officer Spickard’s testimony that he believed that defendant was not free to leave at that point. The trial court concluded that the officer did not have a reasonable suspicion to support such an investigative stop. It granted defendant’s motion to suppress evidence and dismissed the case.
A divided Court of Appeals panel affirmed.[3] The majority agreed with the trial court that Officer Spickard seized defendant when he asked defendant for identification.[4] It concluded that the seizure was not supported by a reasonable suspicion because defendant was seated in a public area, was not engaged in the conduct for which the officers were summoned, and “forthrightly” answered the officer’s questions. As a result, the majority held that defendant’s Fourth Amendment rights were violated and that the trial court properly granted defendant’s motion to suppress the evidence.
*31 The dissenting judge, on the other hand, determined that the initial encounter, including Officer Spickard’s request for defendant’s identification, did not constitute an investigatory stop. The dissent further concluded that subsequent events gave rise to a reasonable suspicion of possible criminal activity and entitled Officer Spickard to transform the encounter into an investigatory stop.
The prosecutor seeks leave to appeal in this Court. After hearing oral argument from both parties on the prosecution’s application for leave to appeal, we have determined that the judgment of the Court of Appeals must be reversed and that this matter must be remanded to the trial court for reinstatement of the charges against defendant and further proceedings.
HI. STANDARD OF REVIEW
This Court reviews a trial court’s factual findings in a suppression hearing for clear error. People v Custer, 465 Mich 319, 325-326; 630 NW2d 870 (2001). But the “[application of constitutional standards by the trial court is not entitled to the same deference as factual findings.” People v Nelson, 443 Mich 626, 631 n 7; 505 NW2d 266 (1993). Application of the exclusionary rule to a Fourth Amendment violation is a question of law that is reviewed de novo. Custer, supra at 326.
IV ANALYSIS
The United States Constitution and the Michigan Constitution guarantee the right of persons to be secure against unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § ll.[5]
*32 Under certain circumstances, a police officer may-approach and temporarily detain a person for the purpose of investigating possible criminal behavior even though there is no probable cause to support an arrest. Terry v Ohio, 392 US 1, 22; 88 S Ct 1868; 20 L Ed 2d 889 (1968). A brief detention does not violate the Fourth Amendment if the officer has a reasonably articulable suspicion that criminal activity is afoot. Custer, supra at 327; People v Oliver, 464 Mich 184, 192; 627 NW2d 297 (2001); Terry, supra at 30-31. Whether an officer has a reasonable suspicion to make such an investigatory stop is determined case by case, on the basis of an analysis of the totality of the facts and circumstances. Oliver, supra at 192. A determination regarding whether a reasonable suspicion exists “ ‘must be based on commonsense judgments and inferences about human behavior.’ ” Id. at 197 (citation omitted).
Of course, not every encounter between a police officer and a citizen requires this level of constitutional justification. A “seizure” within the meaning of the Fourth Amendment occurs only if, in view of all the circumstances, a reasonable person would have believed that he was not free to leave.[6] People v Mamon, 435 *33 Mich 1, 11; 457 NW2d 623 (1990). When an officer approaches a person and seeks voluntary cooperation through noncoercive questioning, there is no restraint on that person’s liberty, and the person is not seized. Florida v Royer, 460 US 491, 497-498; 103 S Ct 1319; 75 L Ed 2d 229 (1983) (plurality opinion).
Here, Officer Spickard’s initial encounter with defendant was consensual. Officer Spickard did not seize defendant when he asked whether defendant lived in the housing complex, nor did he seize defendant when he asked for identification. No evidence indicated that Officer Spickard told defendant at this juncture to remain where he was or that defendant was required to answer the officer’s questions.
Asking such questions to elicit voluntary information from private citizens is an essential part of police investigations. Hiibel v Sixth Judicial Dist Court of Nevada, 542 US 177; 124 S Ct 2451; 159 L Ed 2d 292 (2004). “In the ordinary course a police officer is free to ask a person for identification without impheating the Fourth Amendment.” 542 US_; 124 S Ct 2458; 159 L Ed 2d 302; see also Royer, supra at 501. As the United States Supreme Court has recognized, “[w]hile most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response.” Immigration & Naturalization Service v Delgado, 466 US 210, 216; 104 S Ct 1758; 80 L Ed 2d 247 (1984).
This summary of governing Fourth Amendment principles demonstrates that the Court of Appeals ma *34 jority erred when it analyzed the initial conversation between Officer Spickard and defendant, and Officer Spickard’s request for identification, as if the protections of the Fourth Amendment were implicated. The Fourth Amendment was not implicated until Officer Spickard actually hindered defendant’s attempt to leave the scene, thereby “seizing” him within the meaning of the Fourth Amendment. Specifically, this “seizure” occurred when Officer Spickard followed defendant as he tried to walk away, orally discouraged him from leaving, and, finally, put a hand on his back and told him to wait for the results of the LEIN inquiry. This point — when Officer Spickard physically hindered defendant’s departure and instructed him to stay in the officer’s presence — is the earliest at which a reasonable person might have concluded that he was not free to leave.
By this point, however, Officer Spickard had a reasonable suspicion to make an investigatory stop. First, the officer knew that a female resident had challenged defendant’s unconsented-to presence on her front porch. Second, when defendant saw that Officer Spickard was initiating a LEIN inquiry, he immediately began to act nervously and reached toward his pocket.[7] Third, defendant attempted to walk away from the officer, apparently so intent on leaving that he was willing to lose possession of his identification card.[8] Fourth, although defendant did not live in the area, various people invited him into their homes, offering *35 him protection from further police questioning.[9] Considering the totality of these circumstances, Officer Spickard had a reasonable suspicion sufficient to warrant transforming the consensual encounter into an investigatory stop and briefly detaining defendant until the LEIN inquiry could be completed.
V CONCLUSION
The Court of Appeals erred when it affirmed the trial court’s conclusion that defendant’s Fourth Amendment rights were violated and that the incriminating evidence produced by the investigative stop in this case should be suppressed. We reverse the judgment of the Court of Appeals and remand this case to the trial court for reinstatement of the charges against defendant and for further proceedings consistent with this opinion.
Taylor, C.J., and Weaver, Corrigan, Young, and MARKMAN, JJ., concurred.

 The dissent fails to note these changes in defendant’s behavior. Post at 38. The dissent may view these facts as irrelevant but, when the governing Fourth Amendment principles are correctly applied, these changes in defendant’s behavior support the officers’ ultimate decision to seize the defendant.

 This fact is also omitted from the dissent’s analysis. Thus, while the dissent concludes that no reasonable person would walk away under the circumstances, post at 41, this view was obviously not shared by the defendant, who walked away “under those circumstances.”
That Justice Cavanagh finds our reference to the record “enigmatic!]” and “befuddliing],” post at 41 n 9, demonstrates the dissent’s belief that we are entitled to rewrite the events underlying this appeal with an unrealistic legal formalism. It is only with a lawyer’s armchair detachment that the dissent can hypothesize about what a “reasonable person” would do while ignoring the actions of the individual who actually observed the officers’ conduct and whose liberty was actually at stake.

 Unpublished opinion per curiam, issued November 18, 2003 (Docket No. 240947).

 The majority criticized the trial court’s reliance on Officer Spickard’s subjective behef that defendant was not free to leave once he had been asked to produce identification, but concluded that there was objective evidence as weh to support this conclusion. We disagree.

 Cf. Harvey v Michigan, 469 Mich 1, 6 n 3; 664 NW2d 767 (2003).

 Justice Cavanagh recognizes that this inquiry is an objective one, but asserts that “an officer’s subjective intent is relevant to the extent that it may have been conveyed to the defendant by the words or actions of the officer.” Post at 41. Justice Cavanagh relies on a proposition that secured only two votes in United States v Mendenhall, 446 US 544, 554 n 6; 100 S Ct 1870; 64 L Ed 2d 497 (1980). Also, he appears to misunderstand the meaning of this passage. Mendenhall simply recognizes that an officer’s subjective intent may be relevant if it is objectively manifested. In other words, it restates the principle that only objective conduct and circumstances are relevant for Fourth Amendment purposes.
The dissent errs, therefore, by asserting that Officer Spickard’s subjective beliefs are relevant without determining whether those subjective beliefs were, in fact, objectively manifested. Instead, the dissent “presume[s]” that the officer’s beliefs were apparent to defendant. *33 Post at 42. Assuming arguendo that we are entitled to insert our presumptions into the record, Justice Cavanagh’s presumption is disproved by the fact that defendant himself walked away from the officers during the LEIN check.

 This Court and the United States Supreme Court agree that “ ‘nervous, evasive behavior is a pertinent factor in determining reasonable suspicion.’ ” Oliver, supra at 197, quoting Illinois v Wardlow, 528 US 119, 124; 120 S Ct 673; 145 L Ed 2d 570 (2000).

 Presence in a high crime area coupled with unprovoked flight can also give rise to a reasonable suspicion to support an investigatory stop. Oliver, supra at 197.

 An experienced officer could infer that these bystanders had reason to know that defendant desired to avoid further police scrutiny. This inference adds to the quantum of evidence supporting the conclusion that Officer Spickard had reasonable suspicion to detain defendant.