*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

v

SIMON WHEELER, JR.,

Defendant-Appellee.

FOR PUBLICATION
March 11, 2021
9:15 a.m.

No. 353419
Wayne Circuit Court
LC No. 19-009688-01-FH

Before: LETICA, P.J., and CAVANAGH and FORT HOOD, JJ.

CAVANAGH, J.

The prosecution appeals as of right an order granting defendant's motion to suppress and dismissing charges of felon in possession of a firearm, MCL 750.224f, felon in possession of ammunition, MCL 750.224f(3), carrying a concealed weapon, MCL 750.227, two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, and possession of less than 25 grams of heroin, MCL 333.7403(2)(a)(v). We reverse and remand.

Defendant was arrested at a gas station in Detroit for carrying a concealed weapon without a concealed pistol license (CPL). The arrest was conducted by Detroit Police Officers Diego Fragoso and Steven Anouti. According to Officers Fragoso and Anouti, they saw defendant with a partially concealed handgun in his waistband from their vehicle while on patrol. Specifically, defendant was leaning over his vehicle checking his oil and a handgun was situated in the right side of defendant's waistband with its handle sticking out of his coat. Subsequently, Officer Anouti asked defendant whether he had a CPL and defendant said that he did not. The officers then exited their vehicle, approached defendant, recovered the handgun from his waistband, and placed defendant in handcuffs.

Defendant moved to suppress the evidence from his arrest, arguing that it was the product of an illegal search and seizure because the handgun was not concealed; rather, it was being carried consistent with Michigan's open carry law. Therefore, the police officers' investigatory stop was not justified by a reasonable suspicion that defendant was carrying a concealed handgun and all evidence seized from his arrest should be suppressed.

-1-

The prosecution opposed defendant's motion, arguing that although the handgun's handle may have been visible, "the rest of the weapon was still hidden in [defendant's] waistband and thus concealed within the meaning of MCL 750.227." The prosecution further argued that while concealment under MCL 750.227 occurs when the pistol is not readily discernible by the ordinary observation of persons casually observing the person carrying it, Officers Fragoso and Anouti were not casual observers, but police officers trained with respect to firearms.

After a hearing, the trial court held that the handgun could not have been concealed if it was readily apparent to the arresting officers; thus, the evidence was the product of an illegal search and seizure. Accordingly, defendant's motion to suppress was granted and the case was dismissed. The prosecution now appeals.

The prosecution argues that the trial court's decision to suppress the evidence and dismiss the case must be reversed because the investigatory stop did not violate defendant's Fourth Amendment rights. We agree.

Findings of fact made regarding a motion to suppress evidence are reviewed for clear error, and the findings will be affirmed unless we are left with a definite and firm conviction that there was a mistake. *People v Hill*, 299 Mich App 402, 405; 829 NW2d 908 (2013). But the trial court's ultimate ruling on the motion is reviewed de novo. *People v Williams*, 472 Mich 308, 313; 696 NW2d 636 (2005).

In general, a search or seizure conducted without a warrant is presumptively unreasonable, and thus, unconstitutional. *People v Barbarich*, 291 Mich App 468, 472; 807 NW2d 56 (2011). One exception to the warrant requirement, however, is the *Terry* stop, also known as the investigatory stop. *Terry v Ohio*, 392 US 1, 30-31; 88 S Ct 1868; 20 L Ed 2d 889 (1968). As this Court has explained:

> Under this doctrine, if a police officer has a reasonable, articulable suspicion to believe a person has committed or is committing a crime given the totality of the circumstances, the officer may briefly stop that person for further investigation. Moreover, under *Terry*, a police officer may approach and temporarily detain a person for the purpose of investigating possible criminal behavior even if probable cause does not exist to arrest the person. The scope of any search or seizure must be limited to that which is necessary to quickly confirm or dispel the officer's suspicion. [*Barbarich*, 291 Mich App at 473 (internal citations omitted).]

"[I]n determining whether the totality of the circumstances provide reasonable suspicion to support an investigatory stop, those circumstances must be viewed as understood and interpreted by law enforcement officers, not legal scholars. Also, common sense and everyday life experiences predominate over uncompromising standards." *People v Oliver*, 464 Mich 184, 192; 627 NW2d 297 (2001) (quotation marks, alterations, and citations omitted). Law enforcement officers "are permitted, if not required, to consider the modes or patterns of operation of certain kinds of lawbreakers" and then make "inferences and deductions that might well elude an untrained person." *Id*. at 196 (quotation marks, alterations, and citations omitted).

MCL 750.227(2) prohibits a person from carrying "a pistol concealed on or about his or her person[.]" "Concealment is an essential element of the crime of carrying a concealed weapon." *People v Jackson*, 43 Mich App 569, 571; 204 NW2d 367 (1972). However, it has long been established by this Court that total concealment or invisibility is not required under the statute to support such a conviction. *People v Jones*, 12 Mich App 293, 296; 162 NW2d 847 (1968). Rather, "a weapon is concealed when it is not discernible by the ordinary observation of persons coming in contact with the person carrying it, casually observing him, as people do in the ordinary and usual associations of life." *Id*. Our criminal jury instruction, M Crim JI 11.1(3), states the matter simply: "Complete invisibility is not required. A pistol is concealed if it cannot easily be seen by those who come into ordinary contact with the defendant."

In this case, defendant was approached by the police officers only after they saw a partially concealed handgun in the waistband of defendant's pants. Defendant had been leaning over his vehicle checking his oil when the handle of his gun became visible from around his coat. Thus, it appears that the handgun would not have been even partially visible if defendant had been standing up straight and not leaning over his vehicle so as to cause his coat to fall forward and expose the gun in his waistband. In other words, persons who would come into ordinary contact with defendant would not have easily seen that defendant had a handgun in his waistband. While the handgun came into plain view at the particular point in time when the police officers noticed defendant leaning over his vehicle, such fact "does not negate, as a matter of law, the finding that under any particular set of circumstances there was the necessary concealment." *People v Charron*, 54 Mich App 26, 30; 220 NW2d 216 (1974).

Further, the issue here is not whether there was sufficient evidence to *convict* defendant of the charge of carrying a concealed weapon; rather, the issue here is whether the police officers had a reasonable, articulable suspicion to support their investigatory stop of defendant. The officers were on patrol in an area of the community known for repeated criminal activity, and were paying special attention to activities occurring at gas stations. The police officers saw defendant at his vehicle, with the hood up. Defendant was leaning over his vehicle checking his oil. And the officers saw the handle of a gun sticking out from defendant's clothes. While the handgun was partially visible because of the positioning of defendant's body and the vantage point of the police officers, it cannot be said that defendant was "openly" carrying the weapon in full view for the public to see upon casual observation. A portion of the gun was in defendant's waistband and the portion that was not in his waistband was, at minimum, partially covered by his clothing.

The police officers were entitled to consider the totality of the circumstances, viewed and understood in light of their law enforcement experiences, in deciding whether to approach defendant to investigate the situation. Police officers are permitted to approach a person in a public place and ask questions without violating the Fourth Amendment. *People v Shabaz*, 424 Mich 42, 56-57; 378 NW2d 451 (1985) (quotation marks and citation omitted); *People v Taylor*, 214 Mich App 167, 170; 542 NW2d 322 (1995) (citation omitted). Thus, the officers approached defendant while still in their vehicle and asked if he had a CPL—which demonstrates that the officers believed the gun was concealed. "Asking such questions to elicit voluntary information from private citizens is an essential part of police investigations." *People v Jenkins*, 472 Mich 26, 33; 691 NW2d 759 (2005). Defendant denied having a CPL; he also did not deny having a gun or state that he was legally "openly" carrying his gun. But, at that point, defendant was not obligated to respond in any manner to the police officers; he could have simply ignored them. See *id*. at 33-

34.  That is so because at the time, both police officers remained in their vehicle and there was no indication from them that defendant was not free to leave; thus, defendant was not seized for Fourth Amendment purposes.  See *id*. at 34.  However, after defendant denied having a CPL, the police officers exited their vehicle and detained defendant—at which point the handgun was retrieved from his right hip area.  At this point, a reasonable person would have believed he was not free to leave, and thus, a seizure of defendant occurred.  See *id*. at 32.

Considering the evidence of record, we conclude that the police officers had a reasonable, articulable suspicion that defendant was illegally carrying a concealed handgun, and thus, were justified in conducting an investigatory stop which resulted in the discovery of the handgun, as well as other incriminating evidence.  The trial court's finding that the handgun could not be considered "concealed" was clearly erroneous.  That the handgun became partially visible by the happenstance of defendant's physical positioning or the incidental movement of his clothing does not mean that the gun was being "openly" carried.  In other words, the fact that the handgun was seen does not necessarily mean that the handgun was not "concealed."  Accordingly, the trial court's decision that the incriminating evidence produced by the investigatory stop had to be suppressed because defendant's Fourth Amendment rights were violated is reversed.  This matter is remanded to the trial court for reinstatement of the charges against defendant and for further proceedings consistent with this opinion.

Reversed and remanded.  We do not retain jurisdiction.


/s/ Mark J. Cavanagh
/s/ Anica Letica
/s/ Karen M. Fort Hood

-4-