*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

MICHAEL JONES,

        Defendant-Appellee.

UNPUBLISHED
September 25, 2024
11:36 AM

No. 367754
Wayne Circuit Court
LC No. 23-001478-01-AR

Before: RICK, P.J., and MURRAY and MALDONADO, JJ.

PER CURIAM.

Plaintiff appeals by delayed leave granted the circuit court order affirming the district court's decision to dismiss the charge of carrying a concealed weapon ("CCW"), MCL 750.227, against defendant, Michael Jones. We reverse the order suppressing the gun, vacate the order dismissing the case, and remand the case with an order to reinstate the charges and bind defendant over to the circuit court for further proceedings.

## I. BACKGROUND

This case arises from a routine police check by the Detroit Police Department of a running vehicle parked next to a vacant lot. Officer Deshawn Perry, along with his partner, Officer Flannel, were patrolling a residential street when Officer Perry observed a parked vehicle next to a vacant lot, still running. Making Officer Flannel aware of the vehicle, they pulled up parallel to defendant's vehicle, who was in the driver's seat. While remaining in the scout car, Officer Perry asked the two male passengers if everything was okay, and the passengers responded that they were fine, with one proceeding to say they stopped for the passenger to urinate. This admission prompted Officer Perry to get out of the scout car and ask defendant if defendant had a valid driver's license, to which he responded that he did not. Defendant was then asked if there were any weapons in the car, to which he stated that he was open carrying and did not have a concealed pistol license ("CPL") to carry the gun. Officer Perry asked defendant to exit the vehicle and defendant was detained in the back of the scout car while Officer Perry searched defendant's vehicle. During the search, Officer Perry recovered the gun located close to the center console on the right side, not properly stored and fully loaded. After the search, Officer Perry verified that

defendant's driver's license had been revoked and that defendant did not have a CPL for the recovered gun. Defendant was taken to jail on the charge of carrying a concealed weapon.

Officer Perry had been with the Detroit Police Department for 3 years at the time of the exchange with defendant. Officer Perry testified the original stop was informal and only transitioned to an investigatory stop when he thought defendant's passenger had urinated outside in the vacant lot. In this case, the presence of reasonable suspicion is important when determining if there is a Fourth Amendment right violation. Defendant argues Officer Perry lacked reasonable suspicion because neither defendant nor the passenger admitted that the urinating in question was outside. Plaintiff argues that due to the context of the facts and circumstances of the case, Officer Perry had a reasonable and articulable suspicion that the passenger had just urinated outside. Facts to consider are (1) it being late at night, (2) defendant's car was parked and running next to a vacant lot, (3) the passenger had admitted he just urinated, (4) no readily apparent access to private toilets, and (5) during the exchange, neither defendant nor the passenger specifically denied Officer Perry's determination that the passenger had urinated outside.

At the preliminary examination, the district court granted defendant's motion to suppress the evidence and dismissed the case holding that the gun was recovered during an illegal seizure of defendant. On appeal, the circuit court affirmed the lower court's decision holding that there was a violation of defendant's Fourth Amendment rights as a reasonable person would not have believed that they were free to leave in this exchange. Plaintiff now appeals the decision to this Court.

## II. STANDARD OF REVIEW

The standard of review for a motion to suppress involves two distinct components. First, any factual findings made by the trial court are reviewed under the clearly erroneous standard. This means that the appellate court defers to the trial court's factual findings unless, after a review of the entire record, the appellate court is left with a definite and firm conviction that a mistake has been made. *People v Swirles (After Remand)*, 218 Mich App 133, 136; 553 NW2d 357 (1996). Second, the application of these facts to a constitutional provision, such as the Fourth Amendment, is a question of law. On questions of law, the appellate court owes no deference to the trial court and applies a de novo standard of review to the ultimate conclusion. *People v White*, 294 Mich App 622, 627; 823 NW2d 118 (2011).

In the context of a district court's decision to bind a criminal defendant over for trial, the standard of review is for an abuse of discretion. An abuse of discretion occurs when the district court's decision falls outside the range of principled outcomes. *People v Lucynski*, 509 Mich 618, 633 n 5; 983 NW2d 827 (2022); see also *People v Magnant*, 508 Mich 151, 161; 973 NW2d 60 (2021).

## III. ANALYSIS

Plaintiff argues that the circuit court's holding to suppress the gun as evidence, and to dismiss the case, was not justified as there was reasonable and articulable suspicion that defendant's passenger had urinated outside. Plaintiff contends this reasonable suspicion justified

Officer Perry's actions when transitioning from an informal stop to an investigatory stop, and the recovery of the gun was not a result of a violation of defendant's Fourth Amendment rights.

We hold the district court erred in suppressing the gun as evidence by incorrectly ruling that the evidence was obtained in violation of defendant's rights under the Fourth Amendment. The district court incorrectly held that Officer Perry illegally seized defendant without reasonable suspicion. Accordingly, the district court abused its discretion in not binding defendant over for trial, and the circuit court erred when it affirmed the district court's decision.

The United States Constitution and the Michigan Constitution guarantee the right to be free from unreasonable searches and seizures. US Const, Am IV; Mich Const 1963, art 1, § 11. A warrantless seizure is constitutional if it falls within one of the established exceptions. An investigatory stop is one of the exceptions. *Lucynski*, 509 Mich at 625, 637. A valid investigatory stop must be justified at its inception and reasonably related in scope to the circumstances that justified the interference by police with a person's right to security. *People v Champion*, 452 Mich 92, 98; 549 NW2d 849 (1996). A brief seizure to investigate does not violate the Fourth Amendment if the officer has a reasonably articulable suspicion that criminal activity is afoot. *Terry v Ohio*, 392 US 1, 22, 30-31; 88 S Ct 1868; 20 LEd 2d 889 (1968).

Officer Perry's actions did not constitute a seizure under the Fourth Amendment. Defendant is considered "seized" only if, under the totality of the circumstances, a reasonable person would not have felt free to leave the encounter. *People v Shabaz*, 424 Mich 42, 66; 378 NW2d 451 (1985), citing *United States v Mendenhall*, 446 US 544; 100 S Ct 1870; 64 L Ed 2d 497 (1980). Factors indicating a seizure include the presence of multiple officers, display of weapons, physical touching, partially blocking the defendant's vehicle, or the use of authoritative language or tone. See *Mendenhall*, 446 US at 553-555; *People v Duff*, ___ Mich ___, ___; ___ NW3d ___ (2024) (Docket No. 163961); slip op at 9-12. In this case, there were only two police officers present, with only Officer Perry speaking with defendant. Further, there was no display of weapons or physical restraint, and the officer's language was merely inquisitorial. We hold that a reasonable person in this context would have felt free to leave when the officers initially pulled up and engaged with defendant and the passenger.

Here, the informal stop first began when Officers Perry and Flannel stopped alongside defendant's vehicle, which was parked and running on the street. Officers Perry and Flannel did not even partially block defendant in when they first pulled up to his car. Rather, they parked parallel to speak with defendant. This initial interaction did not constitute a seizure but was merely to check if individuals in the parked vehicle were okay. Following the factors listed in *Duff*, Officer Perry's actions did not reflect a traffic stop as his scout car did not block in defendant's vehicle and Officers Perry and Flannel did not illuminate the scout cars lights or sirens.

Defendant argues that he was illegally seized when Officer Perry pulled up alongside his car because a reasonable person would not have felt free to leave the encounter. In *Lucynski*, 509 Mich at 626, 643, the Court held that the defendant was seized under the Fourth Amendment because a reasonable person would not have felt free to leave due to the police blocking the defendant's only path of egress with their scout car. Further, the officer's seizure of the defendant was based on beliefs that were objectively unreasonable. In contrast, the present case did not involve a traffic stop but rather an informal stop to check on the vehicle's passengers. Officer

Perry did not block defendant's path of egress, as he parked parallel to defendant's car. Additionally, the body camera footage and Officer Perry's testimony shows that he was merely talking to the individuals in the car when he discovered that defendant did not have a valid driver's license, solidifying this stop was not an illegal seizure. Police officers may question any person to gather information and ask for identification without implicating the Fourth Amendment provided that the police "do not convey a message that compliance with their requests is required." *Florida v Bostick*, 501 US 429, 435; 111 S Ct 2382; 115 L Ed 2d 389 (1991); see also *Florida v Royer*, 460 US 491, 497-498; 103 S Ct 1319; 75 L Ed 2d 229 (1983). The facts of the present case differ significantly from those in *Lucynski*, 509 Mich 618, making defendant's reliance on that case misplaced. Officer Perry's actions when he first pulled up alongside defendant's vehicle did not result in an unconstitutional seizure as a reasonable person would have felt, under all these circumstances, free to leave or not engage with police.

The circuit court held that Officer Perry lacked reasonable suspicion of any criminal activity. The court reasoned that the admission to urinating was insufficient without a specific statement that the urination occurred outside, holding that Officer Perry lacked reasonable suspicion. We disagree with this reasoning as Officer Perry reasonably inferred that criminal activity had occurred due to the circumstances and facts of this encounter.

Any evidence obtained from a constitutionally unreasonable search may be excluded unless the police have a warrant, or if a search fell under an exception to the warrant requirement. *People v Eaton*, 241 Mich App 459, 461; 617 NW2d 363 (2000). A warrantless seizure could be seen as constitutional if the officer had reasonable suspicion to believe that the defendant had violated the law. *Lucynski*, 509 Mich at 625. Police officers only need an "articulable and reasonable suspicion" of a violation of the law to request a driver to produce their license. *People v Williams*, 236 Mich App 610, 612; 601 NW2d 138 (1999), citing *Delaware v Prouse*, 440 US 648, 663; 99 S Ct 1391; 59 L Ed 2d 660 (1979). Whether a police officer has reasonable suspicion to make an investigatory stop is determined on a case-by-case basis, examining the context of the facts and circumstances in their totality. *People v Jenkins*, 472 Mich 26, 32; 691 NW2d 759 (2005), citing *People v Oliver*, 464 Mich 184, 192; 627 NW2d 297 (2001). Reasonable suspicion involves officers relying on the environment of their exchanges along with reasonable interpretations and common-sense conclusions about human conduct. *Jenkins*, 472 Mich at 32.

Unlike in *Lucynski*, where the officer's actions were objectively unreasonable, the passenger in this case made an incriminating statement that he had just urinated that led Officer Perry to infer that there had been a violation of law. This admission gave Officer Perry reasonable suspicion that criminal activity had just occurred, thereby justifying the eventual seizure of defendant. The totality of the facts and circumstances before Officer Perry, included: (1) it being late at night, (2) defendant's car was parked and running next to a vacant lot, (3) the passenger had admitted he just urinated, (4) no readily apparent access to private toilets, and (5) during the exchange, neither defendant nor the passenger specifically denied Officer Perry's determination that the passenger had urinated outside. These facts and circumstances gave Officer Perry reasonable suspicion that criminal behavior had taken place, and warranted further investigation.

The encounter with defendant here did not transition to an investigatory stop until Officer Perry possessed reasonable suspicion that the passenger had recently urinated outside, which is a misdemeanor. Defendant argues that Officer Perry could not have reasonable suspicion because

neither occupant explicitly stated that they had urinated outside. But Officer Perry, relying upon his common-sense judgments of human conduct, reasonably interpreted the situation to be that the passenger had just urinated outside. *Jenkins*, 472 Mich at 32. To that point, Officer Perry's statement to the passenger's admission to urinating was to ask, "Where'd you pee at? You know you can't do that man." Additionally, during the encounter, neither defendant nor the passenger explicitly denied that the passenger had urinated outside. This lack of denial to the clearly interpreted criminal activity further enhanced Officer Perry's reasonable suspicion that criminal activity had just occurred.

Therefore, under the totality of circumstances of this entire interaction, it was objectively reasonable for Officer Perry to suspect that the passenger had just urinated in the vacant lot. This reasonable suspicion warranted Officer Perry to transform the informal encounter into an investigatory stop and briefly detain defendant to verify defendant's driver's license and, after defendant's admission that he possessed a gun, his CPL registration. The subsequent discovery of the gun was lawful based on the reasonable suspicion he developed during the initial exchange. Therefore, there was no violation of defendant's Fourth Amendment rights.

The order granting the motion to suppress the gun as evidence is reversed, the order dismissing the case is vacated, and the matter is remanded to the circuit court for further proceedings.[1] We do not retain jurisdiction.

/s/ Michelle M. Rick
/s/ Christopher M. Murray
/s/ Allie Greenleaf Maldonado

---

[1] We hold that there was no Fourth Amendment violation. However, even if a violation was found, the seizure would have still been considered constitutional as defendant freely and voluntarily gave consent that was sufficiently attenuated from the alleged Fourth Amendment violation. *People v Mead*, 503 Mich 205, 216; 931 NW2d 557 (2019), and *Frederick*, 500 Mich 228, 242-243; 895 NW2d 541 (2017).