*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JEREMIAH IZAC WILLIAMS,

Defendant-Appellant.

UNPUBLISHED
February 12, 2025
10:45 AM

No. 370357
Oakland Circuit Court
LC No. 2023-284140-FH

Before: BOONSTRA, P.J., and M. J. KELLY and MALDONADO, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] his guilty-plea conviction for possession of more than 50 but less than 450 grams of cocaine (cocaine possession), MCL 333.7403(2)(a)(*iii*). The trial court sentenced defendant to a prison term of 9 to 20 years. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

On February 1, 2023, officers from the Oakland County Sheriff's Office conducted a traffic stop of a vehicle in Pontiac. Defendant was a passenger in the vehicle. While Detective Matthew Morrison interacted with the driver of the vehicle, Detective Steven Webber was standing outside the vehicle on the passenger's side. He observed defendant pushing something down into his pants and looking over his shoulder several times. When Detective Webber later asked defendant what he had in his pants, defendant denied having anything. Detective Webber performed a pat-down of defendant, and felt a large, round item in defendant's groin area. The item fell down defendant's pant leg, and Detective Morrison identified it as cocaine.

Defendant was arrested and charged with cocaine possession. He later moved to suppress the evidence gathered during the search, and an evidentiary hearing was held. Detective Webber testified that the traffic stop had occurred in an area where numerous complaints about drug

---

[1] *People v Williams*, unpublished order of the Court of Appeals, entered May 9, 2024 (Docket No. 370357).

trafficking and violent crime had been made. Detective Webber testified that he suspected that defendant was armed, and that, based on his experience, he immediately identified the object in defendant's pants as concealed drugs. The trial court denied defendant's motion to suppress. Defendant subsequently pleaded guilty to cocaine possession, reserving his ability to raise the denial of his motion to suppress in an application for leave to appeal to this Court. He was sentenced as described. This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion to suppress, but reviews underlying factual findings for clear error. *People v Stewart*, 512 Mich 472, 480; 999 NW2d 717 (2023). A factual finding is clearly erroneous if, after review of the whole record, this Court has a "definite and firm conviction" that the trial court made a mistake. *Id*. (citation omitted). This Court reviews de novo issues of constitutional law, such as potential Fourth Amendment violations. *People v Mahdi*, 317 Mich App 446, 457; 894 NW2d 732 (2016).

## III. ANALYSIS

Defendant argues that the trial court erred by denying his motion to suppress, because Detective Webber violated his Fourth Amendment rights. We disagree.

The constitutions of the United States and Michigan protect persons from unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11. A search for the purposes of the Fourth Amendment has occurred if the government interferes with a person's reasonable expectation of privacy. *Mahdi*, 317 Mich App at 457-458. "A warrantless search or seizure is presumed unconstitutional unless shown to be within one of several established exceptions." *People v Lucynski*, 509 Mich 618, 637; 983 NW2d 827 (2022). Generally, if evidence is seized in violation of the Fourth Amendment, it is inadmissible at trial. *Mahdi*, 317 Mich App at 458. The government bears the burden of demonstrating that an exception to the warrant requirement applies. *People v Galloway*, 259 Mich App 634, 638; 675 NW2d 883 (2003).

An established exception to the warrant requirement is a *Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968), investigatory stop (*Terry* stop). *People v Williams,* ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 365299); slip op at 4. Police officers may lawfully conduct a "carefully limited" search when they have reason to believe that the person they are interacting with may be "armed and presently dangerous." *Terry*, 392 US at 30. The searching officer must be able to articulate a particular and objective reason for suspecting criminal activity. *People v Pagano*, 507 Mich 26, 32; 967 NW2d 590 (2021). Whether the officer has a reasonable suspicion to search an individual is determined case-by-case, based on the totality of the facts and circumstances. *People v Jenkins*, 472 Mich 26, 32; 691 NW2d 759 (2005). This determination should be made on the basis of "commonsense judgments and inferences about human behavior." *Id*. (quotation marks and citation omitted). Officers may make inferences based on their experience and training, and this Court should defer to their experience. *People v Steele*, 292 Mich App 308, 314-315; 806 NW2d 753 (2011).

A defendant's mere presence in a high-crime area is insufficient to justify a *Terry* stop, but may be a factor to consider if the defendant is also engaged in suspicious behavior. *People v*

*Prude*, ___ Mich ___, ___; ___ NW3d ___ (2024) (Docket No. 165664); slip op at 9.  Similarly, a defendant's mere refusal to cooperate with the police is insufficient to objectively justify reasonable suspicion, but may be considered as part of the totality of the circumstances.  *Id*. at ___; slip op at 10.  Nervous and evasive behavior is a relevant factor.  *People v Oliver*, 464 Mich 184, 197; 627 NW2d 297 (2001).  Individual factors that are insufficient to justify a *Terry* stop may provide reasonable suspicion in their totality if they "are greater than the sum of their parts, and build to form the requisite objective basis for the particularized suspicion that criminal wrongdoing is afoot . . . ."  *Prude*, ___ Mich at ___; slip op at 12-13 (citation and quotation marks omitted).

A search under *Terry* is limited to a search reasonably meant to discover weapons.  *People v Champion*, 452 Mich 92, 99; 549 NW2d 849 (1996).  It should be limited to a search of the "outer clothing."  *Terry*, 392 US at 30.  An officer may not conduct a general pat-down for evidence of any type of criminal activity.  *Id*.  During a *Terry* stop, an officer may ask reasonable questions to confirm or dispel their suspicions.  *Minnesota v Dickerson*, 508 US 366, 373; 113 S Ct 2130; 124 L Ed 2d 334 (1993).  Under the "plain feel" exception to the warrant requirement, an object felt during a pat-down for weapons may be seized if "the identity of the object is immediately apparent and the officer has probable cause to believe that the object is contraband."  *Champion*, 452 Mich at 101 (emphasis omitted).

Both parties agree that Detective Webber conducted a search of defendant for the purposes of the Fourth Amendment.  *Mahdi*, 317 Mich App at 457-458.  Detective Webber did not have a warrant to search defendant, so his search was presumptively unreasonable unless an exception to the warrant requirement applied.  *Lucynski*, 509 Mich at 637.  Defendant argues that Detective Webber did not have a reasonable suspicion that he was armed and dangerous.  *Terry*, 392 US at 30. We disagree.  Detective Webber testified that he thought that defendant may have been armed, because he had repeatedly reached into the waistband of his pants, appeared to be pushing something into the waistband of his pants, and then denied doing so when questioned.  *Pagano*, 507 Mich at 32.  Based on his experience as a police officer, Detective Webber knew that people often keep weapons and drugs in their waistbands or groin area.  *Steele*, 292 Mich App at 314-315.  Based on defendant's behavior and Detective Webber's experience, it was reasonable for him to suspect that defendant may have hidden a weapon in his waistband.  *Jenkins*, 472 Mich at 32.  Detective Webber's body camera footage does not plainly reveal whether defendant did or did not reach into his pants, and defendant cannot be seen on Detective Morrison's body camera or the patrol car camera at the relevant time.  The trial court found that Detective Webber had observed defendant putting something into his pants, and this finding is not clearly erroneous.  *Stewart*, 512 Mich at 480.

The search of defendant occurred in an area that was known to the police as a high-crime area.  While this alone is insufficient to create a reasonable suspicion that defendant was armed, it can support the suspicion because defendant was engaged in other suspicious behavior.  *Prude*, ___ Mich at ___; slip op at 9.  Additionally, defendant did not consent to being patted down by the police and repeatedly told Detective Webber that he had nothing on him.  Defendant's lack of cooperation with the police may be considered as a factor in determining if Detective Webber's suspicion was reasonable.  *Id*. at ___; slip op at 10.  Defendant also looked over his shoulder multiple times, which Detective Webber found suspicious, and answered evasively when asked why he had reached into his pants and if he had anything in his waistband.  *Oliver*, 464 Mich at 197.  Further, Detective Webber testified that, based on his experience, it was common for

individuals carrying drugs to also be carrying guns. *Mahdi*, 317 Mich App at 457. Detective Webber suspected that defendant was armed based on his behavior, the location of the traffic stop, and Detective Webber's experience as a police officer. *Jenkins*, 472 Mich at 32. On balance, it was reasonable for Detective Webber to have an particularized suspicion that defendant had a weapon and to perform a *Terry* stop. *Prude*, ___ Mich at ___; slip op at 12-13.

Defendant additionally argues that Detective Webber exceeded the permissible scope of a search for a weapon. We disagree. A *Terry* stop is meant to be limited to a search for weapons. *Champion*, 452 Mich at 99. While conducting a pat-down to determine if defendant was armed, Detective Webber felt a large, round object near defendant's groin. He stated that he immediately knew it was packaged drugs. Under the plain feel exception, Detective Webber could seize the item because its nature as contraband was immediately apparent. *Id.* at 101. Detective Webber testified that he had seized contraband after patting someone down approximately 50 times, and was familiar with the feel of concealed drugs. Detective Webber had probable cause to believe that the item in defendant's pants was contraband and to seize it. *Champion*, 452 Mich at 101.

Defendant argues that Detective Webber manipulated defendant's pants by "pulling vigorously" on them and reaching inside them. The trial court found otherwise, and the body camera footage of both Detective Webber and Detective Morrison does not appear to show a level of manipulation beyond an allowable pat-down of the exterior of defendant's clothing. *Terry*, 392 US at 30; *Champion*, 452 Mich at 101. The trial court found that Detective Webber's search was limited to a pat-down of the exterior of defendant's clothing, and this finding was not clearly erroneous. *Stewart*, 512 Mich at 480.

Considering the totality of the circumstances, the trial court did not err by denying defendant's motion to suppress. *Stewart*, 512 Mich at 480.

Affirmed.

/s/ Mark T. Boonstra
/s/ Michael J. Kelly
/s/ Allie Greenleaf Maldonado

-4-