*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MARTEZ MICHAEL TURNER,

        Defendant-Appellant.

UNPUBLISHED
September 19, 2025
12:29 PM

No. 371209
Oakland Circuit Court
LC No. 2023-285612-FH

Before: GADOLA, C.J., and MARIANI and TREBILCOCK, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial conviction of carrying a concealed weapon (CCW), MCL 750.227, for which he was sentenced to 18 months' probation and one day in jail, receiving credit for time served. On appeal, defendant argues that his conviction should be reversed because the phrase "place of business" as used in MCL 750.227 is unconstitutionally vague, and because his Fourth and Fifth Amendment rights were violated. See US Const, Am IV; US Const, Am V. We affirm.

## I. BACKGROUND

On July 10, 2023, at about 4:30 a.m., two Ferndale Police Officers were dispatched to a BP gas station to conduct a welfare check on defendant, who was sleeping inside his vehicle in the parking lot. The entire incident was captured on officer body camera footage, which was played for the jury at trial. One of the officers tapped on the window of defendant's vehicle, and defendant opened his vehicle's door. The officer stated, "Someone called on you and I just want to make sure everything is okay." Defendant explained that he was waiting for the gas station to open so that he could get discounted gas because of his employment as a Lyft driver. The officer responded, "No problem at all," and then asked if defendant had identification, which defendant provided, and whether there were any weapons in the car, to which defendant responded that there

-1-

were.[1]  When the officer asked where the weapons were located, defendant informed him that there was one inside of a bag that was resting on the passenger seat, and one in the glovebox.  The second officer was on the passenger side of the vehicle, and trial testimony established that he could see the firearm on the passenger seat.  The first officer asked defendant if he had a concealed pistol license (CPL), and defendant stated that he did not.  The officers then left defendant alone in his vehicle, went to their patrol vehicle, and confirmed that defendant did not have a CPL.  They then returned to defendant's vehicle and, after asking defendant to go back through the information he had previously provided, they arrested him for CCW and placed him in the back of their patrol vehicle while they searched his vehicle.  The officers recovered two loaded guns from defendant's vehicle, along with extra magazines and ammunition.  Later, while in the patrol vehicle—and unprompted by the officers—defendant offered that he had recently arrived from out of state and was not yet eligible for a CPL.

At trial, defendant chose to proceed *in propria persona*.  Defendant filed several motions and other documents asserting that evidence should be suppressed and that his case should be dismissed because his Fourth and Fifth Amendment rights were violated.  Defendant also asserted that, because his vehicle was financed and used for Lyft driving, the guns were found in his "place of business" under MCL 750.227.  Ultimately, the trial court denied all of defendant's motions.  After a jury trial, defendant was convicted and sentenced as described.  This appeal followed.[2]

## II.  CONSTITUTIONALITY OF MCL 750.227

On appeal, defendant argues that his conviction should be reversed because "place of business" as used in MCL 750.227 is unconstitutionally vague.  We disagree.

"This Court reviews de novo a void-for-vagueness challenge not involving First Amendment freedoms in light of the facts of the case at hand."  *People v Dillon*, 296 Mich App 506, 510; 822 NW2d 611 (2012) (quotation marks and citation omitted).[3]  Because defendant did not challenge the constitutionality of MCL 750.227 in the trial court, however, his constitutional challenge is unpreserved.  See *People v Swenor*, 336 Mich App 550, 562; 971 NW2d 33 (2021).  Unpreserved claims are reviewed for plain error affecting substantial rights.  *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).  Under the plain error rule, a claim must meet three requirements: "1) [an] error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights."  *Id.* (citation omitted).  The third prong of this test generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings.  *Id.*  And even when those three requirements have been met, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent

---

[1] The officer testified at trial that he always asks about the presence of weapons as a matter of course, for officer and public safety.

[2] In addition to a brief on appeal, defendant has also filed with this Court a supplemental Standard 4 brief pursuant to Michigan Supreme Court Administrative Order No. 2004-6, 471 Mich c, cii (2004).  Both briefs challenge MCL 750.227's "place of business" language, and the Standard 4 brief raises additional challenges under the Fourth and Fifth Amendments.

[3] Defendant's challenge does not involve any claimed violation of his First Amendment rights.

defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (cleaned up).

"A statute challenged on constitutional grounds is presumed to be constitutional and will be construed as such unless its unconstitutionality is clearly apparent." *People v Johnson*, 336 Mich App 688, 692; 971 NW2d 692 (2021) (quotation marks and citation omitted). "The 'void for vagueness' doctrine is a derivative of the constitutional guarantee that a state may not deprive a person of life, liberty, or property without due process of law." *Turunen v Dir of Dep't of Natural Resources*, 336 Mich App 468, 482; 971 NW2d 20 (2021) (quotation marks and citation omitted). "A statute may be challenged for vagueness on the grounds that it does not provide fair notice of the conduct proscribed or that it is so indefinite that it invites arbitrary or discriminatory enforcement." *Id*. at 482-83.

In this case, defendant was convicted of violating MCL 750.227, which states, in relevant part:

> A person shall not carry a pistol concealed on or about his or her person, or, whether concealed or otherwise, in a vehicle operated or occupied by the person, except in his or her dwelling house, place of business, or on other land possessed by the person, without a license to carry the pistol as provided by law and if licensed, shall not carry the pistol in a place or manner inconsistent with any restrictions upon such license. [MCL 750.227(2).]

The only portion of the statute defendant challenges on appeal is the phrase "place of business," which defendant argues is "vague and provides the potential for arbitrary enforcement." Defendant maintains that, as a Lyft driver, his vehicle was his place of business, and so MCL 750.227(2) should be construed to allow him to carry a weapon in it without a CPL.

As defendant acknowledges, however, caselaw has consistently rejected his proposed construction of the statute. Namely, in *People v Brooks*, 87 Mich App 515, 517; 275 NW2d 26 (1978), this Court held that a taxicab is not a "place of business" under the statute, explaining that "[t]he words 'other land possessed by him' which immediately follow the words 'place of business' compel the view that the place of business referred to is land. Any interpretation to the contrary would give to the word 'other' as applied to the word 'land' no significance whatever." *Id*. at 518. Likewise, in *People v Wallin*, 172 Mich App 748, 751; 432 NW2d 427 (1988), this Court rejected the defendant's argument that his van was a "place of business" under the statute because he was in the business of delivering produce. Citing *Brooks*, this Court explained that "the words 'other land' indicate the legislative intent to limit the place of business exception to business property on land," and to hold otherwise "would render the statutory prohibition inapplicable to any traveling business person who wishes to carry a concealed weapon," which "was certainly not the legislative intent." *Id.* And in *People v Martin*, unpublished per curiam opinion of the Court of Appeals, issued Mar. 8, 2007 (Docket No. 266588), p 2-3, a panel of this Court confirmed and applied this longstanding interpretation, concluding that the statute's "place

of business" exception did not cover a truck driver's possession of weapons in his vehicle.[4]  See also *People v Marrow*, 210 Mich App 455, 464; 534 NW2d 153 (1995) (citing *Brooks* and *Wallin* approvingly), aff'd 453 Mich 903; 554 NW2d 901 (1996), overruled in part on other grounds by *People v Pasha*, 466 Mich 378; 645 NW2d 275 (2002).

Defendant disagrees with the interpretation of MCL 750.227(2) established by this precedent, but fails to demonstrate that we should reject or depart from it here.  See *Stoudemire v Thomas*, 344 Mich App 34, 41 n 2; 999 NW2d 43 (2022) ("Although published decisions of this Court issued prior to November 1, 1990, are not strictly binding upon [this Court], all published decisions of this Court are precedential under the rule of stare decisis and generally should be followed."); see also MCR 7.215(C)(2), (J)(1).  To the contrary, we agree with this caselaw's conclusion that, under the statute's plain language, a "place of business" is properly construed to comprise (like its surrounding exceptions) fixed locations on land, and not vehicles such as defendant's.  See *People v Vasquez*, 465 Mich 83, 89; 631 NW2d 711 (2001) (explaining that, "[i]n seeking meaning, words and clauses will not be divorced from those which precede and those which follow," and that "[i]t is a familiar principle of statutory construction that words grouped in a list should be given related meaning") (quotation marks and citations omitted).  Nor, for that matter, has defendant tied his interpretive arguments to the particular standards governing a vagueness challenge, or explained how that challenge might survive in light of the longstanding interpretation of the statute's plain terms discussed above.  See *Turunen*, 336 Mich App at 483 ("A statute is sufficiently definite if its meaning can be fairly ascertained by reference to *judicial interpretations*, the common law, dictionaries, treatises, or the commonly accepted meanings of words.") (cleaned up; emphasis added).[5]

In sum, defendant has failed to show in this case that MCL 750.227 did "not provide fair notice of the conduct proscribed" or was "so indefinite that it invites arbitrary or discriminatory

---

[4] "Although MCR 7.215(C)(1) provides that unpublished opinions are not binding under the rule of stare decisis, a court may nonetheless consider such opinions for their instructive or persuasive value." *Kennard v Liberty Mut Ins Co*, 341 Mich App 47, 53 n 2; 988 NW2d 797 (2022) (quotation marks and citation omitted).

[5] In his Standard 4 brief, defendant offers definitions for the terms "person," "personal vehicle," and "place of business" that are taken from provisions of the Limousine, Taxicab, and Transportation Network Company Act, MCL 257.2101 *et seq*., and the Uniform Commercial Code, MCL 440.1101 *et seq*.  Defendant also points to *Hertz Corp v Friend*, 559 US 77, 92-93; 130 S Ct 1181; 175 L Ed 1029 (2010), which described a corporation's "principal place of business" as its "nerve center" for purposes of federal diversity jurisdiction, and argues that his vehicle was his place of business because it is "where all coordinated activities take place."  All of this authority, however, is inapposite, and defendant has failed to explain—and we fail to see— how any of it would meaningfully bear on the proper interpretation of "place of business" in the context of MCL 750.227(2)'s criminal prohibition or would render the statute unconstitutionally vague in that respect.

enforcement." *Id*. at 482-483. Accordingly, defendant has not shown error, let alone plain error entitling him to relief. See *Carines*, 460 Mich at 763-764.

## III. ADDITIONAL STANDARD 4 CLAIMS

In his Standard 4 brief, defendant additionally argues that his Fifth Amendment rights were violated because the officers questioned him without providing him with *Miranda*[6] warnings, and that his Fourth Amendment rights were violated because the officers did not have probable cause to justify his arrest and illegally searched his vehicle. We disagree.[7]

## A. FIFTH AMENDMENT

We turn first to defendant's Fifth Amendment challenge. Every individual has a constitutional right against self-incrimination. US Const, Am V; Const 1963, art 1, § 17. "To effectuate this right, the police must warn a defendant of his or her constitutional rights if the defendant is taken into custody for interrogation." *People v Barritt*, 325 Mich App 556, 561; 926 NW2d 811 (2018). "Statements of an accused made during custodial interrogation are inadmissible unless the accused voluntarily, knowingly, and intelligently waived his or her Fifth Amendment rights." *People v Gipson*, 287 Mich App 261, 264; 787 NW2d 126 (2010).

Custody "is a term of art that specifies circumstances that are thought generally to present a serious danger of coercion." *Barritt*, 325 Mich App at 562. To determine if a defendant was "in custody," this Court considers "both whether a reasonable person in the defendant's situation would believe that he or she was free to leave and whether the relevant environment present[ed] the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*." *People v Cortez (On Remand)*, 299 Mich App 679, 692; 832 NW2d 1 (2013) (quotation marks and citation omitted). "[A] reviewing Court must consider the totality of the circumstances," including: "(1) the location of the questioning; (2) the duration of the questioning; (3) statements made during the interview; (4) the presence or absence of physical restraints during the questioning; and (5) the release of the interviewee at the end of the questioning." *Barritt*, 325 Mich App at 562-563 (citations omitted). "The ultimate question whether a person was 'in custody' for purposes of *Miranda* warnings is a mixed question of fact and law, which must be answered independently by the reviewing court after review de novo of the record." *Id.* at 561.

The record does not support the conclusion that defendant was in custody for Fifth Amendment purposes at any point during his pre-arrest interaction with the officers. As noted, the officers were dispatched to the gas station to conduct a welfare check on defendant, and knocked

---

[6] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

[7] The prosecution argues that defendant failed to adequately raise these claims below, rendering them waived or unpreserved on appeal. The record indicates that defendant did claim Fourth and Fifth Amendment violations before the trial court, and while his presentation of those claims was inartful, we are cognizant of the fact that he was proceeding *in propria persona* at the time and we do not view the deficiencies in presentation to be so significant as to render the claims waived or unpreserved.

on defendant's car window to inquire about his well-being and what he was doing at the gas station. Defendant explained he was waiting to get gas, and one of the officers then asked defendant routine questions about whether he had his identification or was in possession of any weapons. After defendant disclosed the weapons in his possession and their location, the officer asked defendant if he had a CPL, and when defendant stated that he did not, both officers returned to their patrol vehicle to confirm defendant's CPL status, leaving defendant alone and unrestrained while they did so. This pre-arrest interaction lasted less than five minutes; defendant was asked only standard, noncoercive questions to ascertain his well-being, request identification, and assess whether he was armed; and at no point did the officers restrain him, block his vehicle, or issue any orders. Defendant has failed to show that these circumstances, taken in their totality, created an environment that presented the same sort of inherently coercive pressures as station-house questioning or that would have caused a reasonable person to believe that he could not leave or otherwise terminate the encounter. See *Cortez*, 299 Mich at 692. Because defendant was not in custody at the time he told the officers that he was in possession of guns without a valid CPL, the officers were not required to give defendant his *Miranda* warnings at that time and defendant's Fifth Amendment rights were not violated.

Defendant, of course, was in custody upon his arrest, and thus at the time he told the officers that he was not yet eligible for a CPL. The record makes clear, however, that defendant volunteered this information without any prompting by officer questioning. "Statements made voluntarily by persons in custody do not fall within the purview of *Miranda*." *People v Lafey*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 361936); slip op at 9 (citation omitted). Accordingly, this statement also provides no support for defendant's claim of a Fifth Amendment violation.

## B. FOURTH AMENDMENT

Defendant's Fourth Amendment challenge fares no better. "The Fourth Amendment of the United States Constitution and its counterpart in the Michigan Constitution guarantee the right of persons to be secure against unreasonable searches and seizures." *People v Rodriguez*, 327 Mich App 573, 583; 935 NW2d 51 (2019); see US Const, Am IV; Const 1963, art 1, § 11. "In general, searches conducted without both a warrant and probable cause to believe evidence of wrongdoing might be located at the place searched are unreasonable per se." *People v Mahdi*, 317 Mich App 446, 458; 894 NW2d 732 (2016) (citation omitted). "And, generally, when evidence has been seized in violation of the constitutional prohibition against unreasonable searches and seizures, it must be excluded from trial." *Id.* (citation omitted). "We review de novo whether the Fourth Amendment was violated and whether the exclusionary rule applies." *People v Stricklin*, 327 Mich App 592, 598; 935 NW2d 59 (2019) (citation omitted).

Defendant argues that his initial encounter with the officers violated his Fourth Amendment rights. As our Supreme Court has made clear, "[h]owever, not all police encounters trigger Fourth Amendment scrutiny, because mere police questioning does not constitute a seizure." *People v Duff*, 514 Mich 617, 630; 22 NW3d 476 (2024) (quotation marks and citation omitted). "When an officer approaches a person and seeks voluntary cooperation through noncoercive questioning, there is no restraint on that person's liberty, and the person is not seized." *People v Jenkins*, 472 Mich 26, 33; 691 NW2d 759 (2005). Instead, a seizure "occurs only if, in view of all the circumstances, a reasonable person would have believed that he was not free to

leave." *Id.* at 32. "In situations where a person might not wish to leave because of reasons independent of police actions, a more precise statement of the test asks whether a reasonable person would have felt free to decline an officer's requests or to otherwise terminate the police encounter." *Duff*, 514 Mich at 631.

For similar reasons discussed above, defendant has failed to show that he was seized for purposes of the Fourth Amendment prior to his arrest because the circumstances do not indicate that a reasonable person in his situation would believe he could not leave or otherwise terminate the encounter. *Id.*; *Jenkins*, 472 Mich at 32. To briefly reiterate, the police officers approached defendant to conduct a welfare check on him in response to a 911 dispatch; defendant admits that he then voluntarily opened his car door "to better listen to what the law enforcement officer had to say," and he proceeded to answer the officer's routine questions. The officers then left defendant unattended and unrestrained while they returned to their patrol vehicle to check his CPL status. We find that, under the circumstances presented by this case, defendant was not seized and the officers did not violate his Fourth Amendment protections.

Defendant further argues that probable cause for his arrest did not exist until after the violations of his Fourth and Fifth Amendment rights, but for the reasons discussed, we do not see merit in defendant's claimed violations. Moreover, the record indicates that the officers had sufficient probable cause. "Probable cause to arrest exists where the facts and circumstances within an officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *People v Hammerlund*, 504 Mich 442, 451; 939 NW2d 129 (2019) (citation omitted). "MCL 750.227 . . . makes possession of a concealed weapon a presumptive crime, which can be rebutted by a suspect with evidence of a CPL." *People v Williams*, ___ Mich App ___; ___ NW3d ___ (2024) (Docket No. 365299); slip op at 10. In Michigan, an officer that suspects a person to be "carrying a concealed weapon may approach the suspect and ask for proof of a CPL." *Id.* at ___; slip op at 10.

In this case, defendant admitted to the officer performing the welfare check that he was committing the presumptive crime of CCW. And, even if defendant had not said anything about having guns in his vehicle, the second officer stated that he could see the firearm on the passenger seat from outside the vehicle. The facts established probable cause for defendant's arrest, and defendant fails to show his constitutional rights were violated in connection with that arrest.

Affirmed.

/s/ Michael F. Gadola
/s/ Philip P. Mariani
/s/ Christopher M. Trebilcock