*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

JOHNNY LEE TUCKER

      Defendant-Appellant.

UNPUBLISHED
March 23, 2026
11:06 AM

No. 371403
Menominee Circuit Court
LC No. 2023-4570-FC

Before: GADOLA, C.J., and BOONSTRA and PATEL, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of one count of possession of methamphetamine, MCL 333.7403(2)(b)(i), and one count of possession of methamphetamine with intent to deliver, MCL 333.7401(2)(b)(i). The trial court sentenced defendant as a habitual offender (fourth offense), MCL 769.12, to concurrent prison terms of 22 to 45 years (264 to 540 months) for each offense. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In June 2023, defendant was driving his pickup truck in Menominee County with his girlfriend, Samantha Munroe. Deputy John Perry of the Menominee County Sheriff's Office was in a marked police vehicle accompanied by a drug-sniffing dog named Kado, with whom Deputy Perry had been trained to conduct drug sniffs. Deputy Perry testified that he had been informed by Detective Trooper John Edwards of the Michigan State Police that defendant and Munroe were suspected drug traffickers who would be driving through Menominee County that day. Deputy Perry ran defendant's license plate through the Law Enforcement Information Network (LEIN) and discovered that defendant's registration had expired and that he lacked valid insurance. Deputy Perry conducted a roadside stop of defendant's truck. After collecting defendant's and Munroe's identification and informing central dispatch that he had made the stop, Deputy Perry circled defendant's truck twice with Kado. On the second circle, Kado alerted at the driver's side wheel well.

Deputy Perry took defendant and Munroe into custody and searched defendant's truck; Detective Edwards and other members of a narcotics task force arrived to assist. They found a

bag of what was revealed through testing to be methamphetamine on Munroe's person, as well as an "8-ball" (approximately 3.5 ounces) of methamphetamine on the passenger-side floor of the truck. A backpack in the truck contained a scale, marijuana, and men's clothing. While Munroe was being booked into the jail, six or seven small baggies of methamphetamine were found in her underwear.

During an interview, defendant told Detective Edwards that he had been selling methamphetamine for a few months, and that he purchased large amounts of methamphetamine in Wisconsin to sell in Michigan. Defendant told Edwards that he and Munroe were on the way to Escanaba and Gulliver to sell methamphetamine when they were stopped. Defendant also claimed that Munroe was only involved because she wanted to help him get out of debt. Munroe initially told Edwards that she was responsible for the methamphetamine, that she planned to sell it, and that defendant did not know there was methamphetamine in the truck. However, by the time of trial Munroe had accepted a plea deal and testified that in fact defendant was the primary buyer and seller of methamphetamine, and that she had merely assisted him in return for methamphetamine for personal use.

Defendant was arrested, tried, and convicted as described. At sentencing, defendant's sentencing guidelines range was determined to be 87 to 290 months. The trial court sentenced defendant within the guidelines as described. This appeal followed.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that his trial counsel was ineffective when he failed to challenge the constitutionality of the drug sniff of his car and move to suppress evidence recovered from his vehicle. We disagree.

The determination whether a defendant has been deprived of the effective assistance of counsel presents a mixed question of fact and constitutional law. See *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). When the trial court did not hold an evidentiary hearing on the issue, there are no factual findings to which this Court, in applying a clear error standard, must defer. *People v Gioglio* (*On Remand*), 296 Mich App 12, 20; 815 NW2d 589 (2012), vacated in part on other grounds 493 Mich 864 (2012). In such cases, this Court will determine on the record alone whether the defendant received ineffective assistance. *Id.* This Court reviews de novo whether a particular act or omission by counsel fell below an objective standard of reasonableness under prevailing professional norms and prejudiced the defendant. *Id.* at 19-20.

To establish a right to a new trial premised on the ineffective assistance of counsel, a defendant must show that: (1) counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *Trakhtenberg*, 493 Mich at 51. In evaluating whether defense counsel's conduct fell below an objective standard of reasonableness, this Court begins with the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and could be considered trial strategy. *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012); *Gioglio* (*On Remand*), 296 Mich App at 22-23. This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight. See *Strickland v*

*Washington,* 466 US 668, 689; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009).

To establish prejudice, a defendant must show that, but for counsel's deficient performance, there is a reasonable probability that the outcome of the proceedings against him would have been different. See *Trakhtenberg*, 493 Mich at 51.

The Fourth Amendment to the United States Constitution (as well as the Michigan Constitution) prohibits unreasonable searches and seizures of persons and property. *Vaughn*, 344 Mich App at 550. Under the exclusionary rule, evidence obtained in violation of a defendant's Fourth Amendment rights is generally inadmissible in criminal proceedings against him. *People v Goldston*, 470 Mich 523, 528; 682 NW2d 479 (2004).

"A brief detention does not violate the Fourth Amendment if the officer has a reasonably articulable suspicion that criminal activity is afoot." *People v Jenkins*, 472 Mich 26, 32; 691 NW2d 759 (2005). Whether there is a reasonable suspicion to make an investigative stop is "determined case by case, on the basis of an analysis of the totality of the facts and circumstances," and "must be based on commonsense judgments and inferences about human behavior." *Id*. (quotation marks and citation omitted). "Reasonable suspicion entails something more than an inchoate or unparticularized suspicion or hunch, but less than the level of suspicion required for probable cause." *People v Champion*, 452 Mich 92, 98; 549 NW2d 849 (1996).

"[W]hen there is probable cause to believe that a driver has violated a traffic law, it is constitutional to briefly detain the driver for purposes of addressing the violation." *People v Kavanaugh*, 320 Mich App 293, 299; 907 NW2d 845 (2017). However, a seizure justified *only* by a police-observed traffic violation "becomes unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a ticket for the violation." *Rodriguez v US*, 575 US 348, 350; 135 S CT 1609; 191 L Ed 2d 492 (2015) (emphasis added) (brackets, quotation marks, and citation omitted). "Once the constitutionally sound basis for [a] traffic stop has been addressed, any further extension of the detention in order to conduct on-scene investigation into other crimes . . . is a Fourth Amendment violation unless new facts come to light during the traffic stop that give rise to reasonable suspicion of criminal activity." *Kavanaugh*, 320 Mich App at 301 (brackets, quotation marks, and citation omitted); *People v Williams*, 472 Mich 308, 315; 696 NW2d 636 (2005). Regarding drug sniffs of vehicles that were initially stopped for traffic violations, "[t]he critical question, then, is not whether the drug sniff occurs before or after the officer issues a ticket but whether conducting the sniff prolongs—i.e., adds time to—the stop." *Rodriguez*, 575 US at 357 (quotation marks and citation omitted). An alert from a properly trained narcotics dog on a vehicle, without more, establishes the necessary probable cause to search every part of the vehicle that may conceal the object of the search. *People v Clark*, 220 Mich App 240, 242; 559 NW2d 78 (1996); *People v Carter*, 194 Mich App 58, 60-61; 486 NW2d 93 (1992).

In this case, Deputy Perry testified that he queried LEIN and discovered that defendant's registration was expired, and he appeared to be operating his vehicle without valid insurance. Accordingly, Deputy Perry had probable cause to believe that the vehicle's owner had violated traffic laws and to detain the vehicle to address the violation. *Kavanaugh*, 320 Mich App at 299. The record shows that Deputy Perry conducted a drug sniff shortly after detaining defendant's vehicle and collecting defendant's and Munroe's identification. Accordingly, there is no

indication that the drug sniff prolonged the traffic stop. *Rodriguez*, 575 US at 357. Any attempt by defense counsel to suppress the results of the search on the ground that defendant's detention was unconstitutionally prolonged would therefore have been futile. "Counsel is not ineffective for failing to advance a meritless position or make a futile motion." *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018).

Defendant also challenges the reliability of drug sniffs in general, but he does not specifically challenge Kado's training or performance record. Moreover, although defendant argues that Kado's alert at the wheel well of the truck did not provide probable cause to search the inside of the vehicle, Kado's alert provided probable cause to search every part of the vehicle that might have contained contraband. *Carter*, 194 Mich App at 60-61. Accordingly, defendant has not demonstrated that a motion to suppress evidence based upon a lack of valid probable cause to conduct a warrantless search would have been anything but futile. See *Clark*, 220 Mich App at 242. Defense counsel was not ineffective for failing to make such a motion. *Head*, 323 Mich App at 539.

### III. SUFFICIENCY OF THE EVIDENCE

Defendant also argues that the evidence at trial was insufficient to support his conviction of possession with intent to deliver methamphetamine. We disagree.

"This Court reviews de novo [a] defendant's challenge to the sufficiency of the evidence." *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). On appeal, we view "the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the crime to have been proved beyond a reasonable doubt." *Id*. "The standard of review is deferential; a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Bailey*, 310 Mich App 703, 713; 873 NW2d 855 (2015) (quotation marks and citation omitted).

"The sufficient evidence requirement is a part of every criminal defendant's due-process rights." *People v Wolfe*, 440 Mich 508, 514; 489 NW2d 748 (1992), mod 441 Mich 1201 (1992). "[D]ue process requires the prosecution to prove every element beyond a reasonable doubt." *People v Oros*, 502 Mich 229, 240 n 3; 917 NW2d 559 (2018). We resolve all conflicts in the evidence in favor of the prosecution. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). "A jury is free to believe, or disbelieve, in whole or in part, any of the evidence presented." *People v Perry*, 460 Mich 55, 63; 594 NW2d 477 (1999). A defendant's intent may be inferred from all of the facts and circumstances of the case, and because of the difficulty of proving an actor's state of mind, minimal circumstantial evidence is sufficient. *People v Fetterly*, 229 Mich App 511, 517-518; 583 NW2d 199 (1998).

Defendant argues that the evidence at trial was insufficient to show his intent to deliver methamphetamine. We disagree. Proof of actual delivery is not required to prove a defendant's intent to deliver a controlled substance. *Fetterley*, 229 Mich App at 517. "Intent to deliver can be inferred from the quantity of the controlled substance in the defendant's possession and from the way in which the controlled substance is packaged." *Id.* at 518.

In this case, defendant told police that he was on his way to sell methamphetamine when Deputy Perry stopped his truck. He further indicated that Munroe was only involved because of him. Munroe testified that she was helping defendant sell drugs and that defendant had previously packaged methamphetamine for sale. Some of the methamphetamine recovered from defendant's vehicle was packaged in separate baggies. A scale with methamphetamine residue was found in defendant's truck and another in defendant's apartment. Defendant argues essentially that the amount of methamphetamine seized by police was small enough that it could have been for personal use. However, to prove the elements of a crime beyond a reasonable doubt, "the prosecution need not negate every reasonable theory of innocence but must only prove its own theory beyond a reasonable doubt in the face of whatever contradictory evidence is presented." *Id.* at 517. Viewed in the light most favorable to the prosecution, the evidence was more than sufficient to establish defendant's intent to deliver methamphetamine. *Id.* at 517-518.

## IV. ADMISSION OF DEFENDANT'S STATEMENTS

Defendant also argues that the trial court erred by admitting Detective Edwards's testimony regarding statements made by defendant about his history of drug-dealing. Alternatively, he argues that his trial counsel was ineffective for failing to object to this testimony. We disagree.

Defendant argues that the rule of *corpus delicti* should have prevented the admission of his statements about buying and selling methamphetamine in Wisconsin and being "in the game" (selling illegal drugs) for three months. We disagree. A defendant's voluntary confession is generally admissible. See *People v Cipriano*, 431 Mich 315, 338-339; 429 NW2d 781 (1988). However, the *corpus delicti* rule is intended to "prevent the use of a defendant's confession to convict him of a crime that did not occur." *People v Konrad*, 449 Mich 263, 269; 536 NW2d 517 (1995). To that end, "the rule provides that a defendant's confession may not be admitted unless there is direct or circumstantial evidence independent of the confession establishing (1) the occurrence of the specific injury (for example, death in cases of homicide) and (2) some criminal agency as the source of the injury." *Id.* at 269-270 (citation omitted). When the crime in question is possession of controlled substances, the rule is satisfied by independent evidence that the controlled substances in question existed and were possessed by someone; there need not be independent evidence that the drugs were possessed by the defendant. *Id.* at 270.

In this case, defendant made statements to Detective Edwards that he would purchase large amounts of methamphetamine from two individuals in the Wisconsin area and deliver the majority of it to other people while keeping some for himself. Defendant was not charged with crimes related to his statements about his history of buying and selling large amounts methamphetamine; rather, the statements were offered to show defendant's intent to deliver the specific methamphetamine that was found in his vehicle and on Munroe's person. In other words, there was ample independent evidence that the methamphetamine for which defendant was charged existed and was possessed by someone. *Id.* at 270. Accordingly, the trial court did not err by admitting Detective Edwards's testimony, and any objection by defendant's trial counsel would have been futile. *Head*, 323 Mich App at 539.

Additionally, even if defendant's statements were admitted in error, we disagree with defendant's argument that without those statements, the jury would have concluded that the methamphetamine found in defendant's vehicle and the scales, residue, and baggies found in the

vehicle and in his home did not support a conviction of possession with intent to deliver methamphetamine. The jury could have concluded, based on the circumstantial evidence alone, that the methamphetamine seized was intended for delivery rather than personal use. See *Fetterley*, 229 Mich App at 518.

## V. SENTENCING

Defendant argues that he is entitled to resentencing for two reasons: (1) that the trial court erred by scoring offense variable (OV) 14 at ten points rather than zero, and (2) that his sentence was disproportionate and therefore unreasonable. We disagree with both arguments.

## A. OV 14

This Court reviews the trial court's factual determinations at sentencing for clear error. See *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*. See also *People v Calloway*, 500 Mich 180, 184; 895 NW2d 165 (2017).

In this case, defendant did not object to the scoring of OV 14 at sentencing; accordingly, this issue is unpreserved for appellate review. See MCL 769.34(10); MCR 6.429(C). We review unpreserved claims of error for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

A sentencing court must consult the advisory sentencing guidelines and assess the highest amount of possible points for all offense variables. *People v Lockridge*, 498 Mich 358, 392 n 28; 870 NW2d 502 (2015). The sentencing offense determines which offense variables are to be assessed, and the appropriate offense variables are generally assessed by reference to the sentencing offense. *People v Sargent*, 481 Mich 346, 348; 750 NW2d 161 (2008). "A defendant is entitled to be sentenced by a trial court on the basis of accurate information." *People v Francisco*, 474 Mich 82, 88; 711 NW2d 44 (2006). A trial court relies on inaccurate information when it sentences a defendant by consulting an inaccurate advisory guidelines range. *Id*. at 89 n 7.

"A sentencing court has discretion in determining the number of points to be scored, provided that evidence of record adequately supports a particular score." *People v Dickinson*, 321 Mich App 1, 21; 909 NW2d 24 (2017). The trial court's factual determinations regarding offense variables must be supported by a preponderance of the evidence. *People v Osantowski*, 481 Mich 103, 111; 748 NW2d 799 (2008). "The trial court may rely on reasonable inferences arising from the record evidence to sustain the scoring of an offense variable." *People v Earl*, 297 Mich App 104, 109; 822 NW2d 271 (2012).

OV 14 concerns a defendant's role in a multiple-offender situation. MCL 777.44(1). A trial court should assess 10 points for OV 14 if the defendant "was a leader in a multiple offender situation." MCL 777.44(1)(a). When scoring this OV, the trial court should consider the entire criminal transaction. MCL 777.44(2)(a).

Defendant argues that the record does not support the conclusion that he, rather than Munroe, was the leader, noting that Munroe testified that she had told defendant to give her any drugs he was carrying and that defendant obeyed. We disagree. Both defendant and Munroe made statements indicating that defendant was the leader in their drug-selling operation, with Munroe "helping" defendant. Munroe testified that she originally attempted to "take the blame" for the methamphetamine when speaking to police, because she did not want defendant to get into trouble. The trial court could reasonably infer from the record evidence that defendant was the driving force behind his and Munroe's possession and sale of methamphetamine. *Earl*, 297 Mich App at 109. Accordingly, we find no error in the trial court's scoring of OV 14. To the extent that defendant argues that his trial counsel was ineffective for failing to object to the scoring of OV 14, counsel was not ineffective for failing to raise a meritless objection. *Head*, 323 Mich App at 539.

## B. PROPORTIONALITY

Defendant argues that his sentences were disproportionate and therefore unreasonable, requiring resentencing. We disagree. We review for an abuse of discretion a trial court's application of the principle of proportionality. *People v Dixon-Bey*, 321 Mich App 490, 520; 909 NW2d 458 (2017).

A sentence is unreasonable if it is disproportionate to the offense and the offender. *People v Purdle*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 353821), slip op at 3. A sentence within the sentencing guidelines range is presumed to be proportionate, but that presumption may be rebutted. *People v Posey*, 512 Mich 317, 359; 1 NW3d 101 (2023).

Defendant's sentencing guidelines range was calculated at 87 to 290 months. Defendant was sentenced to concurrent minimum sentences of 22 years (264 months) for each conviction. Therefore, defendant's sentences are presumed to be proportionate, unless defendant rebuts that presumption. *Posey*, 512 Mich at 359.

We conclude that defendant has not rebutted the presumption of proportionality. Defendant does not make a specific appellate argument concerning the proportionality of his sentence but merely quotes (and presumably adopts) defendant's trial counsel's argument that defendant should have been sentenced to the low end of the guidelines. Trial counsel argued that a 22-year sentence would not allow defendant an opportunity to rehabilitate; counsel further argued that defendant was a good person who might have been "wearing a mask" to hide a learning or cognitive disability. Trial counsel also noted that defendant had family, including children, and that he missed them.

The trial court discussed defendant's potential for rehabilitation, noting defendant's lengthy criminal history, including a history of assaultive crimes as well as drug offenses, and noting additionally that many of his crimes, including his current convictions, had occurred while he was on probation or parole. The trial court therefore concluded that defendant's potential for rehabilitation was low, that defendant had demonstrated that he would commit more crimes, including violent ones, while under community supervision such as probation or parole, and that

it was important to focus on punishment and the protection of society by sentencing defendant to long prison terms. On this record, we see no reason to disturb the trial court's exercise of its sentencing discretion. *Dixon-Bey*, 321 Mich App at 520.

Affirmed.

/s/ Michael F. Gadola
/s/ Mark T. Boonstra
/s/ Sima G. Patel